410 P.2d 144

**Matt LEWIS, Petitioner,**

**v.**

**The INDUSTRIAL COMMISSION of Arizona and P. B. Snider (Snider Plumbing and Heating Company), Respondents.***

**No. I CA–IC 78.**

Court of Appeals of Arizona.

Jan. 24, 1966.

---

\* The Petition was filed with the Arizona Supreme Court and assigned that Court's Number 8632. The Arizona Supreme Court issued its Writ of Certiorari. The matter was referred to this Court pursuant to Section 12–120.23 A.R.S.

George Sorenson, Jr., Phoenix, for petitioner.

Robert K. Park and Courtney L. Varner, Phoenix, for respondents.

CAMERON, Judge.

This is a writ of certiorari to review the lawfulness of an award of the Industrial Commission, finding that the petitioner had suffered a 15% general physical functional disability, but further finding that this disability did not incapacitate petitioner from returning to his former occupation and that therefore the claimant had suffered no loss of earning capacity. We are called upon to determine whether the evidence reasonably supports their finding.

On or about 1 October, 1959, petitioner was employed by the respondent Snider Plumbing and Heating Company, as a plumber. In the course of his employment, he was involved in an automobile accident. As a result of injuries received in said accident, surgery was performed on 17 May, 1960, resulting in the removal of a herniated intervertebral disc between the fourth and fifth lumbar vertebrae. Surgical exploration of the fifth lumbar to first sacral disc was also undertaken. On 5 May, 1961, further surgery was performed resulting in a spinal fusion. At the time of his injury, petitioner was 52 years of age, had a sixth or eighth grade education, and was a master plumber. He had been in the construction business most of his life, and on recent occasions, prior to working for the respondent plumbing company, had been a plumbing contractor himself and had owned his own plumbing business.

From the time of the injury to the time we issued this writ of certiorari, the petitioner was seen by some 27 doctors, and had submitted himself to examination by several examining boards as requested by not only himself, but the Industrial Commission. The reports in the file and the testimony of petitioner and others are ample to indicate that petitioner's hostile and antagonistic attitude toward the Commission and many of the doctors who examined him, not only exhausted the patience of those involved, but did little to assist him in his claim for compensation. We are here concerned with petitioner's attitude only insofar as it effects his desire to return to gainful employment. For as was stated by our Supreme Court:

"The Commission could find, * * * 'that neither the industrial injury nor any subsequent residual physical or functional disability causally related thereto prevents the applicant from returning to his regular employment.' Cf. Murray v. Industrial Commission, 87 Ariz. 190, 349 P.2d 627. It could conclude that the best treatment was to take petitioner off compensation, thereby giving him the incentive to return to regular employment." Chavarria v. Industrial Commission, 99 Ariz. 315, 409 P.2d 26, filed 23 December, 1965.

Dr. Maier Tuchler specializing in neurology and psychiatry testified in part as follows:

"Question: * * * if the accident hadn't happened, would he still be employed if there had been no other injury?

"Answer: I can answer that definitely. He would still be employed.

"Question: Well, is it your opinion that because of the aggravation of his industrial accident that the man's neurotic condition has been so inflamed that he is not able to return to work?

"Answer: I would have to agree with that and make one addition due to both emotional and neurotic as well as physical incapacity. You cannot leave off his complaints his neck tension and the residuals and they are not too great, of the low back. Mr. Lewis can bend but he can't get down in a corner underneath a sink in a bizarre position with two wrenches and exert pressure. This is the real problem. Where to put this man and what to do with him. That has been the headache I have been struggling with.

"Question: Then will you tell me what the aggravation did and is doing or stopped doing to Matt Lewis?

"Answer: I think Matt Lewis had compensated adequately for his drinking, had made a pretty good adjustment prior to this accident. This accident triggered off a whole host of disabilities and dependencies that were under control by the character of this gentleman while he was struggling with AA. I would even go so far as to say that this fact that his wife divorced him the fourth time was important in making him feel helpless as support, and I can't minimize it."

And:

"Question: Doctor, from your knowledge of his background both educational and emotional, including his marriages, his alcoholism, in your opinion, what type of job if he can't do heavy work this man is qualified for, if any?

"Answer: This is a very critical problem, Matt isn't qualified for anything else.

"Question: Then he can't direct his activities towards anything because there isn't anything else he can do. Is that in essence what it amounts to?
"Answer: That's about it."

Dr. Richard McGovern, a specialist in physical medicine and rehabilitation, testified as follows:

"Question: Doctor, in your opinion, will Mr. Lewis ever be able to engage in any type of strenuous or manual labor?

"Answer: I feel that that is not possible for him.

"Question: Doctor, is there any way for you to place upon Mr. Lewis a percentage of disability? Is this possible from your knowledge of his case, of his condition?

"Answer: I don't really feel that I would be qualified to put an accurate percentage of disability on his case other than to say that I feel he is disabled for all but very sedentary activities, work, just activities, hence, with the small amount of disability rating, this would seem to me to be above 50% disabling."

And:

"Question: Mr. Sorenson asked you whether or not it would be possible for Mr. Lewis to engage in any strenuous or manual labor and I believe you replied that it was not possible. Now there are really two catagories there. A strenuous labor and a manual labor. Do you make a distinction, sir?

"Answer: I didn't in that answer. I felt by his question that he meant them to be synonymous. I do not feel that it would be possible for Mr. Lewis to engage in strenuous labor entailing strenuous and heavy physical effort, nor in manual labor that implied the same movement. Manual labor meaning the use of his hands, maybe in a sedentary position that would be possible."

William S. Arnett, a rehabilitation agent, whose primary duties are to act as a liaison between the Industrial Commission and the Division of Vocational Rehabilitation testified concerning interviews and tests he had with petitioner. He stated:

"* * * that the claimant poses a vocational risk despite the disabilities with regard to functional testing, the personality features of this individual make him have a lesser position. This individual does not appear to desire to be cooperative or have a motivation which is extremely necessary in order that any rehabilitation plan may have a measured amount of success."

Ernest Bereit, a pre-vocational evaluator at Gompers Memorial Rehabilitation Center, testified as follows:

"Question: Mr. Bereit, under personality attributes you state that although Mr. Lewis began his occupational therapy here at the Center with a rather belligerent attitude he soon changed and became more cooperative and a more pleasant person. Would you please tell me what you observed upon which you based that conclusion?

"Answer: He seemed to be very unhappy about the whole situation and he did things which he was asked to do in a very reluctant manner. He would do them, but you could see from what he did that he wasn't very happy about doing it for you, but he soon changed as far as I am concerned."

And:

"Question: Are you capable of expressing an opinion based on your observation of Mr. Lewis while at Samuel Gompers as to whether he was physically capable of doing these jobs that you have listed in your summary and recommendation?

"Answer: Yes.

"Question: Was he, in your opinion, physically capable?

"Answer: These jobs I have listed here are all light jobs, physically, yes, he worked quite steady when he was working at these file cabinets; he did stop every once in a while and rest a bit, he claimed he has some pain, how much I wouldn't be able to judge. * * *"

Dr. Eisenbeiss testified:

"I believe that Mr. Lewis is going to continue to have a complaint somewhere as long as he feels there is liability with respect to this accident and his present condition."

The testimony is ample to indicate that petitioner has psychiatric problems in addition to his physical problems. The testimony is also ample to indicate that as a result of these psychiatric problems the petitioner has consistently failed to cooperate with the Industrial Commission in the request of the Commission to make a sincere and conscientious effort to seek work either at his old trade or in other lighter occupations.

On appeal, by writ of certiorari, this Court can only affirm or set aside the award of the Industrial Commission. We recognize that the injured workman has the burden of proof in relation to establishing that he is entitled to compensation. At the same time, proceedings before the Industrial Commission are not truly adversary proceedings. Certainly there is no obligation on the part of the Industrial Commission to seek out and present matters in derogation of compensation, the Commission's obligation being to impartially inquire into all of the facts both favorable and unfavorable. The record discloses that Lewis has not been cooperative and when an injured workman unduly resists appropriate Industrial Commission procedures and Industrial Commission requests, he may find that he has placed himself in a position where he is at least temporarily without compensation. The record in this case reflects that a major portion of the motivation for Lewis's

lack of cooperation is the very injury which is the subject of the proceeding. The injury triggered personality traits which Lewis had until recently kept reasonably under control. In this case, the record reflects that this percentage of general physical functional disability would incapacitate Lewis from returning full time to the full physical responsibilities and duties of a plumber. We recognize that lack of cooperation rendered it exceedingly difficult for the Industrial Commission to reasonably determine Lewis's loss of earning capacity. The following finding that "the 15% general physical disability suffered by said applicant does not incapacitate him from returning to his former employment" is not a true reflection of Lewis's situation. The true situation is that by reason of his uncooperative attitude, the Commission did not have sufficient facts to determine his loss of earning capacity. Our Supreme Court has stated:

> "If an injured workman is legally entitled to benefits by reason of a mental disease, the Commission has no authority to deny him such benefits as a means of enforcing rehabilitation." Murray v. Industrial Commission, 87 Ariz. 190, 195, 349 P.2d 627, 630 (1960).

The Arizona Supreme Court in Chavarria v. Industrial Commission, supra, stated that the Commission "could conclude that the best treatment was to take petitioner off compensation, thereby giving him the incentive to return to regular employment." The difference between the Chavarria case, supra, and the one at bar (and Murray v. Industrial Commission, supra) lies in the determination by the Supreme Court in Chavarria v. Industrial Commission, supra, that the finding by the Commission that "neither the industrial injury nor any subsequent residual physical or functional disability causally related thereto prevents the applicant from returning to his regular employment." In the instant case, we do not believe that the finding by the Commission that petitioner is able to return to his former employment is reasonably supported by the evidence.

We are not totally unaware of the problem facing the Commission in the instant case, and nothing we say in this opinion should prevent the Commission, after reasonable attempts to further rehabilitate petitioner, including possible psychiatric care and treatment, from issuing a finding and award based on the conscious refusal of the petitioner to cooperate in these attempts, should that be the case.

Conversely, should a petitioner have a complete change of attitude after receiving the "incentive to return" to work as stated in Chavarria v. Industrial Commission, supra, and still finds that he has suffered a loss of earning capacity as a result of the injury, nothing would prevent him from petitioning the Commission for a rehearing based upon this "new evidence".

The Commission attempted to completely discredit the petitioner by showing, among other things, that he had been married seven times instead of three or four as he stated; that he enlisted in the Army at the age of 17 rather than the age of 15 as he stated; that though he insisted he had not had anything to drink for 8 years, that he had been arrested for intoxication as late as 5 years before the hearing; and that although he had resided in Arizona for three years since 1957, his truck still contained California license plates, contrary to Arizona state law. Also, reference was made to his criminal record, and the file indicates that he was arrested and sentenced to prison and served three years in 1931.

That the Commission was able to discredit the petitioner on many aspects of his testimony, there is little doubt. Although this evidence may be considered in connection with his credibility, we would, however, remind the Commission that industrial compensation is not based on the good moral character of the petitioner, but is founded upon whether the petitioner comes within the scope of the workmen's compensation statutes.

■   The file also reflects the report of the referee to the Industrial Commission at the close of the hearing and prior to the issuance of the final award. The report states in part:

> "But while it is not a matter of record, at the conclusion of the hearing, he [petitioner's attorney] advised his client, 'Matt, the referee could have been a lot tougher with you than he was'."

We are aware that the Industrial Commission of Arizona processes many applications for industrial insurance and that when hearings are requested, these hearings are conducted by referees appointed by the Commission. What weight the Commission gives to the referee's report in making its decision is not known by this Court, but we would certainly say that matters completely outside the record, such as a conversation between petitioner and his attorney, are not the proper subject of a report by the referee, and certainly should not be considered by the Commission in arriving at its decision. We will further state that in reviewing the files of the Industrial Commission and the records of hearings conducted by the referees, that we do not look with favor upon hearings in which the referee, abandoning the cloak of impartiality, joins the attorney for the Commission as a second adversary against the petitioner and his counsel. Such action and conduct reflects upon the fair and impartial hearing which should be afforded to every petitioner for workmen's compensation, and could possibly be a ground for setting aside a finding and award of the Commission.

For the reasons above stated, the award is set aside.

STEVENS, C. J., and DONOFRIO, J., concurring.

* This appeal was filed with the Arizona Supreme Court and assigned that Court's Number 7935. The matter was referred to this Court pursuant to A.R.S. Section 12-120.23.