412 P.2d 81

Clinton A. QUIRK, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona and Graver Tank and Mfg. Company, Respondents.*

No. I CA–IC 81.

Court of Appeals of Arizona.

March 17, 1966.

Rehearing Denied April 15, 1966.

Review Denied May 17, 1966.

red to this Court pursuant to Section 12–120.23 A.R.S.

Gorey & Ely, by Stephen S. Gorey, Phoenix, for petitioner.

Twitty, Sievwright & Mills, by John F. Mills, Phoenix, for respondent Graver Tank and Mfg. Co.

Robert K. Park, Chief Counsel, for respondent Industrial Commission of Arizona.

STEVENS, Chief Judge.

This Industrial Commission matter relates to the technical aspects of a workman's choice of remedies and the right to relief where the effects of an industrial injury still continue.

Clinton Quirk is an iron worker by trade. IIis livelihood, except when he is in a supervisory capacity and sometimes even then, often requires the individual to work many feet off of the ground and requires the physical capacity to engage in heavy lifting as well as stooping and bending.

■ Prior to the accident in question, in 1959 while Quirk was working for Fischer, he sustained an industrial injury to his back causing him to lose approximately two weeks of employment. The medical treatment was minimal. The Industrial Commission opened a file in relation to this industrial incident. The file was referred to without objection during the hearing in the case now before us. Quirk testified that from the time of his recovery from the 1959 incident until the 10th day of April 1962, he was free from back trouble. The employer in the matter now before us sought to establish some causal relationship between the 1959 incident and the 1962 industrial accident and the record shows a lack of success in that connection. There was no proof presented to refute the accuracy of Quirk's statement as to the absence of back trouble following the Fischer incident of 1959 up to the Graver Tank industrial accident of 10 April 1962. Even though Quirk is an interested party, it is our opinion that this unimpeached statement by him must be accepted as true, since the record does not reflect the impeachment or the discrediting of Quirk's testimony.

In the recent decision of Dabbs v. Industrial Commission, 2 Ariz.App. 598, 411 P.2d 36, decided on 18 February 1966, we stated that:

"* * * the Commission has no right to disregard the testimony of an interested witness unless it be that the testimony has been impeached or contradicted or unless it be that the circumstances are such as to cast doubt upon the credibility of that testimony * * *."

In April 1962, Quirk was working for the respondent Graver in connection with the construction of silos at a missile site near Tucson. The hours were long, some days the men worked 10 hours and some days they worked 12 hours. Some weeks the men worked 7 days. There were days that the men received as much as $65.80 for the day of work and there were weeks for which the men were paid as much as $516. The record establishes that Quirk sustained a back sprain as an industrial accident on 10 April 1962. He received medical treatment. He requested that the doctor permit him to continue work due to the high pay scale and due to the fact that with the large crew of which he was a member, Quirk was sure that he could be given the easier jobs. Also the job was nearing completion. Quirk told the doctor that when the job ended he would take all of the necessary medical treatment for his back. He continued on the job. He was assigned to the lighter aspects of the work. His fellow crew members aided him. When that particular silo was completed he was transferred to another silo with a different crew and there he did not have the same privilege of light work nor did he have the same degree of help from his fellow crew members, so he was unable to continue the employment and quit.

He was initially treated by Dr. Rawson, but by the time Quirk left the job in early June, Dr. Rawson was on vacation. He was referred by Dr. Rawson's office to other doctors with whom Quirk was not happy. His back continued to hurt him. He learned of a possible job in Montana and requested permission of the Industrial Commission to leave the State of Arizona, leaving before any affirmative permission had been granted.

Dr. Rawson's report of 17 April 1962, states that he first examined Quirk on 11 April, that he estimated that treatment would be needed for approximately two weeks and that Quirk "was able to resume light work on 4/12/62", the report further states that Quirk was "advised to remain on light work another week and continue physiotherapy treatments". The doctor's report of 13 July states that Quirk was last seen on 21 June, when he claimed:

"* * * that he could continue his low-level, non-hazardous job here, but could not start a new more danger-

ous job with the amount of back soreness he had. This sounds reasonable, but the lack of objective findings makes it difficult to determine any definite disability. * * * no permanent disability * * *".

Quirk talked to an investigator for the Industrial Commission on or about the 20th of June and signed a handprinted statement. This statement referred to the fact that Dr. Rawson was on vacation and that Quirk had been referred to other doctors, one of whom was Dr. Eddy who, according to the statement,

"said the pain in my back and leg would not interfere with my work. As an iron worker working at heights, etc. balance & co-ordination are important and this I don't have due to back & some leg pain. Dr. Eddy said he could not help me. I then went to Dr. T. P. McWilliams who treated me & who has aided me to the extent I can work. Dr. McWilliams work release is June 25th. June 6th I stopped work. I requested permission to leave State to work in Montana where work is available * * *".

The investigator's report quotes Quirk as stating that he was told by Dr. Eddy,

" * * * there is nothing the matter with you. You can go back to work."

The investigator further indicates that Quirk,

"was not satisfied with this opinion of Dr. Eddy's, since his back did continue to hurt him, so he then went to Dr. T. W. McWilliams, D. O., who treated claimant twice".

On 31 July, a "Final Findings and Award" was entered. Finding 3 being,

"that applicant was not disabled for work in excess of 7 days after said accident, and, therefore, is not entitled to compensation".

Finding 4 being that,

"applicant has not sustained any permanent physical disability attributable to said accident,"

and one of the determinations of the award was,

"IT IS ORDERED that applicant's case be and the same is hereby closed and that applicant take nothing further from the above named defendant insurance carrier."

All of these statements are contained in a printed form of award. The award contained notice that Quirk could apply for a rehearing within 20 days. A copy thereof was mailed to Quirk in Colorado.

Quirk testified at a later hearing that he did receive a copy of the award. He did not file a formal petition for rehearing. He did testify however,

"Q. Did you get a copy of that Findings and Award?

A. Which is this now?

Q. July 31, 1962.

A. Yes, I did.

Q. Why didn't you protest it?

A. I sent it in. I sent that form back.

Q. What form?

A. That form.

Q. You mean the final Findings and Award?

A. I sent that form back in August sometime. I sent that back and I enclosed a note saying I was still having trouble with my back and neck, and they sent me no more forms so I didn't know what to do. I figured I would come back.

Q. You referred to this letter, and it seems to be dated August 5, from Aurora, Colorado?

A. Right. That's when I had come back.

Q. It says:

'Dear Sirs: In regard to this D–184' —that's the April 10, 1962, claim of injury—'I was off work in excess of seven days and was not released to

go back to work until June 25, not the 21st.

'Please return my W–2 forms at your convenience.

Yours truly,
Clint Quirk
13396 East Colfax
Aurora, Colorado'

I am still having some trouble with my back and neck.—Is that what you are referring to?

A. Yes. I sent that back with that form that they sent me.

Q. Except for that letter you didn't have any more communication with the Commission regarding the final Findings and Award denying you compensation?

A. They never answered me."

This particular correspondence is not in the file which was referred to this Court although a copy of a letter of 9 August is in the file which makes reference to an earlier letter from Quirk which we assume to be the letter referred to in the testimony quoted above.

The evidence at later hearings indicates that after Quirk left Arizona he had several jobs related to his trade. He could not perform those jobs which called for the customary heavy lifting of his occupation and the only jobs he could perform in that area of employment were of a supervisory nature. He testified that he made no claim against any employer in relation to back problems because he figured that the injury from which he was suffering was the 10 April 1962 injury and the persons by whom he was employed when these back problems caused him trouble, were not responsible for the condition.

He returned to Arizona and shortly thereafter went to the Industrial Commission complaining that his back was still giving him trouble. He was given a form entitled "Petition and Application for Readjustment or Reopening of Claim", on which he stated,

"my back and neck are still giving me considerable trouble and I feel that I am in need of further medical care. I will support this petition with medical evidence",

this having been filed on 5 November 1962. In this connection, it is interesting to note that the rules of procedure adopted by the Industrial Commission discuss the matter of forms, Rule 5 stating:

"Forms Supplied:—In order to assist parties in presenting their claims before the Commission (without the necessity of the expense of employing an attorney) certain forms have been prepared and will be supplied free of charge. No other forms are either necessary or advisable for the above purpose."

And Rule 8 stating:

"Forms Prescribed by Commission:— The Commission will provide proper forms required by the provisions of the Workmen's Compensation Act, and by these rules, and such forms should be used in all instances where they are prescribed; provided, however, that where a typewritten form substantially follows the printed form, the same may be accepted."

The rules advised the workmen in substance: We have a form for every occasion. If we do not have a form to fit your need, then you cannot do it.

Not only does Rule 5 advise the injured parties that attorneys are not required, Subsection A of Section 23–1061 A.R.S. purports to license doctors to practice law without the privilege of charging for their services in connection with the filing of the workmen's compensation claims. Subsection A states in part:

" * * * The physician shall inform the injured employee of his rights under this chapter and shall give all necessary assistance in making the application for compensation and such proof as required by the rules of the commission without charge."

In view of the case of State Bar of Arizona v. Arizona Land Title and Trust Co., 90 Ariz. 76, 366 P.2d 1 (1961) supplemental opinion, 91 Ariz. 293, 371 P.2d 1020 (1962), we question the validity of this burden cast upon the medical profession.

There was no medical report furnished until the report of Dr. Person, which was filed on 24 March 1963. The reporter's transcripts of the two hearings indicate that Dr. Person filed two reports, one of which indicated the possibility that on the 22nd of March 1963, Quirk suffered an aggravation of the April 1962 industrial accident whereas, the other indicated that on that day Quirk suffered an industrial accident, both while employed by a later employer, Western. Unfortunately, neither of these reports is in the file which is certified to this Court.

Between the 5 November 1962 filing and Dr. Person's report, Quirk worked in the Phoenix area, most of his work being as a foreman, this being a lighter, less strenuous aspect of the iron workers' trade. His back still gave him trouble. On 22 March 1963, his back pained him so much that he left his employment and decided to see a doctor. In this connection, he testified that he did not sustain an injury working for Western, but that:

"my back had kept hurting and getting worse all the time. It kept getting worse and worse. * * * I mean at that time I didn't figure I had had a fair shake, doing justice to myself as I had to go before doctors when I had not worked for quite awhile. That is not what is bothering me, it is when I am working. So I wished to see somebody when my back was in the condition when it bothers me. So I kept going and going until it got so bad that I couldn't straighten up any more. I figured that is the time to give these doctors a chance to examine me and see how I am."

The two reports from Dr. Person created some confusion, one report appeared to relate Quirk's problems to the Graver employment of 10 April 1962, and the other to the Western employment on 22 March 1963. Much was made of the apparent conflict. The doctor did not recall the details of his interview with the petitioner. The reports were used in an effort to show inconsistent statements by Quirk to his doctor. We agree with Quirk's attorney that it is the facts which control and that it is not a question as to Quirk's opinion or the doctor's opinion. The evidence before us supports the absence of an industrial accident on 22 March.

Upon receipt of Dr. Person's report and before any formal hearing, the Industrial Commission took action dated 2 April 1963, setting up a group medical consultation,

"for the purpose of ascertaining whether or not applicant is suffering new and additional disability due to injury of April 10, 1962".

There was a medical consultation and a report. On 18 April 1963, the Commission on its standard printed form entered a,

"Findings and Award for New, Additional or Previously Undiscovered Disability"

with a 20 day clause and Graver filed a timely petition for rehearing stating,

"defendant is informed and believes that applicant's disability is not caused by his injury of April 10, 1962 while employed by defendant (Graver)",

and that Graver desired to introduce evidence to the effect that Quirk,

" * * * sustained an injury by accident on March 22, 1963 and his disability, temporary or otherwise is causally related to said injury".

Thereafter, the first of two formal hearings was held. Following the first hearing, the 18 April 1963 award was affirmed and Graver again petitioned for a rehearing. This time Graver urged that Quirk's proper procedure should have been to make an application for rehearing following the 31 July 1962 award, that the 1959 injury was an element in this matter, that aggravation constitutes an injury by accident, that,

therefore, the 22 March 1963 strain constitutes a new injury and that Quirk has no right to proceed against Graver where he had higher earnings as distinguished from Western.

At the first formal hearing, Mr. Quirk was present without counsel and he did not employ counsel until after the petition for rehearing following the 13 January 1964 award. At the second formal hearing, the referee questioned Quirk's attorney as to whether or not the attorney desired to make any changes in the 5 November 1962 petition without disclosing what the referee had in mind. Quirk's attorney declined to make any changes asserting that he had no right to change a document which had been filed by someone other than himself. When the referee made his report, it became clear as to what he had in mind, for we find in his report a conclusion that the 5 November 1962 petition is,

"JURISDICTIONALLY DEFECTIVE in failing to allege new, additional or previously undiscovered disability and does therefore not give the Commission the power to entertain his request to reopen".

As an alternative to this conclusion, the referee entered a conclusion that there was no evidence showing any new or previously undiscovered disability. The referee criticized Quirk in his report. The referee emphasizes that the 31 July 1962 award "Found *no personal physical disability*". The report contains the following statement by the referee:

"However, he chose to continue working presumably because of the fantastically high wages on government missile site contracts * * *".

The referee suggests applicant Quirk's physical disability "disappeared" on the day the award 7–31–62 became final. If Quirk wants his compensation to "reappear" he has to show new, or additional or previously undiscovered physical disability or new injury by accident.

Section 23–1061 A.R.S. provides in part. as follows:

"A. An employee entitled to compensation shall file with the commission an application therefor together with the certificate of the physician who attended him. * * *

"C. Like application shall be made for an increase or rearrangement of compensation. No increase or rearrangement shall be operative for any period prior to application therefor, and any increase or rearrangement shall be within the limits and classifications provided in this chapter."

Rule 64 of the Rules of the Industrial Commission is in part as follows:

"Application for Reopening or Readjustment of Claims:—Application for an increase or rearrangement of compensation or application for compensation based upon new, additional or previously undiscovered disability, or application or petition to reopen claim, shall be filed with the Commission in writing, setting forth facts and circumstances, and supported by a written report of a physician or surgeon, duly and regularly licensed to practice medicine and surgery in the State of Arizona, setting forth facts and circumstances in detail relating to the then physical condition of said applicant. * * *"

As heretofore pointed out, Rule 5 and 8 admonished the workman that he does not need service of an attorney and that he has no rights before the Commission except in relation to the use of forms supplied by the Commission. We recognize that the time for the filing of a motion for rehearing is jurisdictional in relation to the motion for rehearing. Spicer v. Industrial Commission, 3 Ariz.App. 7, 411 P.2d 180, filed 28 February 1966. We recognize that the time for the filing of a petition for review is jurisdictional in relation to the power of this Court to entertain a review. Contreras v. Industrial Commission, 98

Ariz. 221, 403 P.2d 535 (1965). We recognize that the date of the filing of a Section 23–1061, subsec. C petition is the earliest date to which a change can relate back. The forms used to secure the rights granted by Section 23–1061, subsec. C are not sacred, they are procedural. The allegations therein, while important in relation to a timely objection as to their sufficiency, are not jurisdictional, because in the absence of a timely objection, matters may be inquired into and determined which are beyond the scope of the express language of the petition. This is the circumstance in connection with this case. The employer and the Commission are at this late date precluded from questioning the sufficiency of the language of the 5 November 1962 petition. In Bierman v. Industrial Commission, 2 Ariz.App. 548, 410 P.2d 666 (1966), we pointed out that it is recognized that work is often the best therapy; and that in those instances where the experiment to establish the accuracy of this principle in reference to a particular workman proves to be unfounded, the Industrial Commission has jurisdiction to reconsider the matter.

Quirk is criticized for working at high wages instead of seeking Industrial Compensation. Quirk is criticized for following the doctor's advice "to remain on light work". At the time Quirk left Graver's employment, Dr. Rawson stated it was difficult to find definite disability; but that it was reasonable that Quirk could not start a full time iron worker's job with the amount of back soreness that he had. Quirk protested to the Industrial Commission's investigator that he had not recovered; and when he received the award he made a like statement to the Industrial Commission. Had Quirk then sought a rehearing, what additional evidence was there to produce? Had there been a rehearing, and had the 31 July award been affirmed; then on a petition for review, what basis would the court have had to set aside the award other than to say that the file was prematurely closed?

The rights under Section 23–1061, subsec. C are very broad. Rules cannot restrict statutory provisions. So far as we have been able to ascertain from the records in the Library and Archives, Rule 64 came into being after the enactment of Section 23–1044, subsec. F, and Subsection F was declared to be unconstitutional in the case of Adkins v. Industrial Commission, 95 Ariz. 239, 389 P.2d 118 (1964). Rule 64 must be examined in the light of Adkins.

■ The first paragraph of Rule 64 of the Rules of The Industrial Commission of Arizona has been heretofore quoted.

The first sentence of Subsection C of Section 23–1061 A.R.S. is as follows:

"Like application shall be made for an increase or rearrangement of compensation."

The language set forth in Section 23–1061 is contained in the act to which reference is made by the constitutional provision authorizing workmen's compensation legislation namely, Section 8 of Article 18 of the Arizona Constitution, A.R.S. The above quoted portion of Rule 64 does not appear to be contrary to the rule announced in Adkins, if Rule 64 is read in the disjunctive, which allows petitions to be presented to the Industrial Commission for:

1) An application for increase or rearrangement of compensation, or

2) An application for compensation based upon new, additional or previously undiscovered disability, or

3) Application or a petition to reopen claim.

The balance of Rule 64, which requires the submission of a medical report, is reasonable if it is not construed to require the showing of a medical change as a condition precedent to the consideration of relief under grounds 1 and 3. We do not exclude by this statement, the possibility that in relation to grounds 1 or 3, evidence of physical change or lack of physical change could well be an import-

ant factor in the decision of the Commission.

In the matter of claims of the nature which we are now considering, where "work therapy" is prescribed, there appears to be two alternatives. The first alternative is to keep the file open without a final award for an indefinite period of time to determine whether or not work therapy is successful. This would involve an excessive amount of administrative detail, and we are confident that on the average, it would serve no great purpose. The other alternative is to close the file with the privilege of reopening on a proper showing. Perhaps the "Final Award" should be reworded to make clearer the worker's right to request a re-evaluation. It is true that there must be an end to these claims, and that certain procedural steps must be followed. At the same time, we must be realistic. To require that a worker file a petition for rehearing or a petition for a writ of review under the circumstances which are present in this case, in order to keep alive his rights after "work therapy" is in our opinion, unrealistic.

██ . It is our opinion that where, as here, a man accepts medical advice to try light work and where as here, he testified he:

> "was off work on doctor's orders until approximately the second week in February. I was still under doctor's orders not to go to work. But I was in such financial shape, with no money coming in, that I had to go to work",

that man works by sheer necessity. Where, as here, it appears from the record that there is a reasonable basis for a finding that the workman was advised that he would benefit from work therapy and that he permitted the award to "become final" seeking in good faith to follow the medical advice, then the jurisdiction which the Supreme Court has stated the Industrial Commission retains in these matters, may be exercised under Section 23–1061, subsec.

C, notwithstanding the technicalities of the Rule 64.

The award is set aside.

CAMERON and DONOFRIO, JJ., concurring.