472 P.2d 97

Harriet FISH, Widow of Vance Fish, and Jennifer R. Smith and Jeffrey R. Smith, Stepchildren of Vance Fish, Petitioners,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Western Pine Sales, Inc., Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. 1 CA–IC 327.

Court of Appeals of Arizona, Division 1, Department A.

June 23, 1970.

Rehearing Denied July 22, 1970.

Review Denied Oct. 13, 1970.

Mariscal, Burton & Weeks, by Phillip Weeks, Phoenix, for petitioners.

Donald L. Cross, Chief Counsel, Phoenix, for respondent The Industrial Commission of Arizona.

Snell & Wilmer, by Bernald C. Porter, Phoenix, for respondent employer.

Robert K. Park, Chief Counsel, by Courtney L. Varner, Phoenix, for respondent Carrier.

STEVENS, Judge.

The single issue before the Court is the propriety of the award which denied the claim of the minor stepchildren of the deceased employee, a claim asserting the right to death benefits. This claim was decided under the law as it existed prior to 1 January 1969.

Although the claim of the widow was allowed, we will herein refer to her as the petitioner. The minor children, whose claim for death benefits is the subject of the matter now before the Court, will be referred to as the children. The mother of the petitioner, who is the grandmother of the minor children, will be referred to as the grandmother. The deceased employee, Vance Fish, will be referred to as the employee.

Western Pine Sales, Inc., will be referred to as the employer and L. D. Porter who was the president of the employer will be referred to as the employer's president. The other respondents will be referred to as the Commission and as the Fund respectively.

The Commission entered its first award on 7 October 1968. This was entered by a majority vote of the then three-man Commission. Commissioner Murphy and Commissioner Ahearn approved the award and Commissioner Thoeny disapproved the award. Thereafter a five-man Commission was created and after a further hearing the second award, the one now before this Court, was entered on 18 July 1969. Commissioners Murphy, Thoeny and Bailey approved the award and Commissioner Ahearn disapproved the award.

In both awards it was found:

That the employee met his death in an airplane crash on 31 October 1967 while in the course of his employment; and that the employee "left surviving him and totally dependent upon him for support at the time of said injury" which resulted in his death, the petitioner herein.

The first award included the children as being totally dependent and the second award found that the children "are not entitled to death benefits."

On 31 October 1967, the children were of the approximate ages of 5 years and 3½ years.

In the early stages of the processing of the claims for death benefits, the thrust of the resistance to the claims was an assertion that the injury to the employee and his resulting death did not arise out of and in the course of his employment. The employee had worked for his employer as a lumber salesman for several years. The employer owned the airplane involved in the fatal accident and the employee was the only licensed pilot working for the employer. The date of the accident was to be the final date of his employment. We are not informed as to the length of the notice which the employee had given to his employer prior to his contemplated leaving of the employment. The issue as to the injury and the death were resolved by the first award and this issue is no longer contested.

## THE MARITAL STATUS

Both the petitioner and the employee were married to other spouses prior to their marriage to each other on 14 October 1967. The prior marriages of the petitioner and of the employee appear to be important to all of the respondents before this Court.

The petitioner and her former husband, the father of the children, were married in November 1961. At least as early as November 1966 they were not living together. The petitioner filed a complaint for divorce in Maricopa County Superior Court, Cause No. 95232. We have not been informd as to the date of the filing. She testified that her former husband had been ordered to pay *pendente lite* child support. This was not disputed. The payments were directed to be made through the office of the Clerk of the Superior Court. The petitioner testified that the *pendente lite* payments had not been made. The records of the Clerk of the court were not produced to refute this statement. The divorce decree was introduced into evidence. It recites a hearing on 7 July 1967, the signing of the decree on 27 July 1967 and the filing thereof on 1 August 1967. The decree provides for child support of $50.00 per month for each child, payable through the office of the Clerk. The petitioner testified that no payments were made prior to 31 October 1967. The records of the Clerk were not called for. The petitioner testified that there was an order of the Court directing that an income tax refund be endorsed over to her. This was not disputed. She testified that she turned the refund check over to her attorney in partial payment of the attorney's fees due in connection with the divorce. There was also testimony that the petitioner's first husband was not steadily employed and that at times his whereabouts were not known.

The employee, as the plaintiff, filed a suit for divorce in the Superior Court in Maricopa County. This was Cause No. 96161. We are not informed as to the date of filing. The decree recites that there was a property settlement agreement bearing date of 31 August 1967. The property settlement agreement is not before us. The employee's then wife was granted an uncontested divorce on her counterclaim by decree signed and filed 13 September 1967. The decree recites that there were three children born to the marriage. One of the children had been emancipated by age and the other two had been emancipated by marriage. There was a limited award of alimony.

## THE PETITIONER'S EMPLOYMENT

In 1966 the petitioner sought employment as a receptionist in an apartment building known as the Camelback Towers, herein referred to as the Towers. Her application disclosed that she was a married woman with two children. Her employment commenced on 1 November 1966. Her initial net salary was $62.85 a week. The apartment manager testified that her hearsay information was that the petitioner was without material assets and that the petitioner " * * * complained a lot, that is why she got a raise."

While in her employment, the petitioner rented an apartment in the Towers ef-

fective 1 April 1967 and occupied the apartment with her children and the grandmother. Her initial rent was $192.00 a month. Later she occupied a different apartment for which the rent was $184.00 a month. The grandmothers' income was from Social Security.

On the request of the employee, the petitioner resigned her employment with the Towers on 9 June 1967 and thereafter she received two checks from the Towers, one for $74.55 and the other for $31.48. There is no evidence that the petitioner had further gainful employment. There was evidence from two witnesses that the petitioner was being considered for an office job in the employer's office so that she could learn something about the lumber business. This was not refuted.

## THE PERSONAL RELATIONSHIP

At a time when both the petitioner and the employee were separated from their respective spouses, and the employee's divorce action was in process in the Superior Court, the petitioner and the employee met for the first time. The petitioner's suit for divorce carried a lower case number and must also have then been pending. These parties met at the Towers after the petitioner, her children and the grandmother had moved there on 1 April 1967. The apartment manager testified that the petitioner's first husband never lived in the Towers.

Shortly after the petitioner and the employee met, the employee asked the grandmother for her permission to marry the petitioner. The employee thereafter paid th rent on the apartment in the Towers. The manager of the Towers, without the benefit of her records being before her, testified:

"Q The only evidence of who actually paid is your memory then?

"A That is correct.

"Q Did Mr. Fish pay you by check or cash?

"A Cash as I recall."

Later on in her testimony, the manager was quite positive that all payments had been made in cash. Again, she had not had the opportunity of examining her records. Among the exhibits which the petitioner produced was a check for rent. It is urged that this check impeached the manager. We do not agree.

The petitioner testified that not long after she and the employee met, the employee also occupied the apartment when he was in town. The apartment manager saw him at the Towers many times during the daytime. In response to a question concerning whether she was testifying that the two resided together at the Towers, she responded:

"No, he was over there, but as far as I know they never lived together, he was over there frequently, I am not sure, in the evenings."

The petitioner and the employee rented a home in Scottsdale in August 1967. On 31 August 1967 the employee, the petitioner, the children and the grandmother moved into the Scottsdale home. They lived there until his death, a fact which was corroborated by the person from whom the initial lease had been obtained.

Some time after the parties met, the employee started giving his paychecks to the petitioner for deposit in her bank account. The petitioner testified that the checks were drawn on an account in Globe. She testified that at first the branch bank manager verified with the employee that it was permissible for her to place the checks in her account, the manager being concerned because of the consistent low balance in the petitioner's account. These facts were not disputed, although the bank's branch manager was under subpoena and the checks were part of the records of the employer. The records of the petitioner's bank account were introduced into evidence.

On the evening of the airplane crash, the employee was talking with a friend prior to his takeoff on the fatal cross-country flight to Phoenix. The friend

testified that he asked the employee to remain overnight and to return to Phoenix the next day rather than flying to Phoenix that night and driving back the next day. The witness stated:

'He was in a hurry to leave and get back down on account of the kids Halloween party."

There was other evidence of the devotion of the employee to the children, including the direct payment of money for their benefit for groceries, clothes and travel.

It would unduly lengthen this already long opinion to recite in detail further facts as to the relationship before and after the 14 October 1967 marriage.

The Fund is strongly critical of this relationship. As we stated in Clark v. Industrial Commission of Arizona, 10 Ariz.App. 486, 460 P.2d 22 (1969), review denied, quoting from Lewis v. Industrial Commission, 2 Ariz.App. 522, 410 P.2d 144 (1966):

" 'Industrial compensation is not based on the good moral character of the petitioner, but is founded upon whether the petitioner comes within the scope of the workmen's compensation statutes.' "

Whether one approves or disapproves of the conduct of the petitioner and the employee prior to their marriage, we must remember that we are considering the claim for death benefits of two very small children. The employer's president was aware of the relationship and notwithstanding an indebtedness from the employee to the employer, the employer loaned $1,000.00 to the employee in anticipation of the marriage.

### THE EMPLOYEE'S FINANCIAL PROBLEMS

It is urged that the employee was having domestic financial problems, that he had filed a voluntary petition in bankruptcy, and that he was indebted to his employer. There is no question but that these are correct statements. The employer's president testified that he was aware of the fact that the petitioner and the employe were residing in the same apartment, that the employee had the aforesaid money problems, and that the employer loaned the employee $1000.00 to enable the parties to be married. It is suggested that if the employee deposited money in the petitioner's bank account it was for the purpose of defrauding his first wife and in derogation of his obligations under the bankruptcy petition. With this we are not impressed. All parties knew the name and location of the employer and it would have been easy to reach his compensation at its source.

### THE STATUTES

At the time material to this case, the Arizona Revised Statutes contained the following applicable provisions:

"§ 23–1041. Basis for computing compensation

"A. Every employee of an employer within the provisions of this chapter who is injured by accident arising out of and in the course of employment, or his dependents in event of his death, shall receive the compensation fixed in this chapter on the basis of such employee's average monthly wage at the time of injury."

"§ 23–1046. Death benefits

"A. In case of an injury causing death, the compensation therefor shall be known as a death benefit, and shall be payable in the amount, for the period, and to and for the benefit of the persons following:

\* \* \* \* \* \*

"2. To the widow, if there is no child, thirty-five per cent of the average wage of the deceased, to be paid until her death or remarriage, with two years compensation in one sum upon remarriage.

\* \* \* \* \* \*

"4. To the widow or widower, if there is a child or children, the additional amount of fifteen percent of such wage for each child until the age of eighteen

years, the total not to exceed sixty-six and two-thirds per cent of the average wage. * * *."

"§ 23–1064. Presumptions of dependency; determination

"A. The following persons are conclusively presumed to be totally dependent for support upon a deceased employee:

"1. A wife upon a husband whom she has not voluntarily abandoned at the time of the injury.

&ast; &ast; &ast; &ast; &ast; &ast;

"3. A natural * * * child under the age of eighteen years, * * * a stepchild [may be regarded] as a natural child if dependent.

"B. Questions of dependency and the extent thereof shall be determined as of the date of the injury to the employee and the dependent's right to any death benefit shall become fixed as of such time irrespective of any subsequent change in conditions, and the death benefits shall be directly recoverable by and payable to the dependent entitled thereto."

A.R.S. § 23–1046, subsec. B also contains provisions relating to partial dependency for those who are not "conclusively presumed to be totally dependent" under the provisions of A.R.S. § 23–1064.

## SUPPORT OF THE CHILDREN

The natural father had the duty to support the children, a duty by virtue of his being their father and by virtue of the *pendente lite* order as well as the decree of divorce. The employee had no legal duty to support the children. The employee encouraged the petitioner to not press for the collection of child support, believing that the nonpayment of child support would render it easier to later adopt the children. The entitlement of the children to death benefits arises out of the fact of support and dependency together with the status of stepfather and stepchildren on 31 October 1967 and not out of a legal duty.

■ The Court is reluctant to enlarge the field of judicial knowledge. The Judges know, as lawyers and as Judges, that all too often the natural father will not or possibly cannot support his children. This is not a local problem, it is a national problem, witness the Uniform Reciprocal Enforcement of Support Act. The historical note with reference to this Act which appears in Volume 9(c), Uniform Laws Annotated, Copyright 1957, advises that the first such Act was approved by the National Conference of Commissioners on Uniform State Laws and by The American Bar Association in 1950, and that the proposed Act was amended by the Conference in 1952. Arizona adopted the Act as Chapter 34 of the Laws of 1953. Witness also the necessity of orders for *pendente lite* support, the inclusion of support provisions in decrees of divorce and the issuance of contempt citations. The fact of the natural and court-imposed duty of support does not rebut the petitioner's positive evidence of the natural father's lack of a contribution to the support of the children.

■ The Fund urges that the children did not become stepchildren until 14 October and that the employee died on 31 October without having received a paycheck during the status of stepfather and stepchildren. The record as to this fact has escaped our attention. The fact of support for several months prior to the death of the employee is clear even though the legal status of stepfather and stepchildren was of short duration. As stated in A.R.S. § 23–1064, subsec. B, it is the status as of 31 October 1967 which controls.

The only evidence that the natural father contributed to the support of the children is evidence of support after the death of the employee. In May 1968 he made a payment of $680.00, far less than the accumulated arrearage. There was one hospital bill for minor surgery for one of the children which was performed after the 31st of October and the payment for that surgery was made by the natural father's hospital insurance. After the 31st of October while the petitioner was ill, he did at-

tempt to be of some help. On the other hand, there was testimony that the employee listed the children as his dependents in the insurance carried by him through the employer and no effort was made to disprove this testimony.

## IMPEACHMENT

■ It is urged that a January 1968 financial statement which the petitioner gave to a bank in support of a successful effort to secure a loan cast discredit upon all of her testimony and that The Industrial Commission and the Court are free to disregard the whole thereof. We do not agree. The petitioner testified under oath that there were few true statements in the financial statement which she had given to the bank. One of the items in the statement to the bank was "child support— $1350.00." The hearing officer nevertheless found the children to be totally dependent upon the employee. As to this item the hearing officer's report stated:

"[h]ad she actually been receiving this amount from her former husband, then without question the children could not have been *totally* dependent upon Vance G. Fish at the time of his death. However, we must note that just about every other entry on the loan application was false. (emphasis added)

"The employer has proven that Harriet Fish was far less than truthful on her application for a loan. This raises certain questions about her credibility in general. However, in the opinion of the Hearing Officer, the entry for child support on the application cannot realistically be considered as a truthful admission that she was receiving such support, especially in view of the fact that almost everything else on the application was not true."

The untrue statements did not impeach the testimony which she had given under oath and at most cast suspicion upon her testimony if the same had not been corroborated. In our opinion her testimony was adequately corroborated.

It is urged that the employee admitted to the employer's president that he was "living off of" the petitioner. The evidence is as follows:

"Q Did Mr. Fish ever at any time during his lifetime advise you that his financial condition was so stressed he was having to live off the earnings of Harriet Smith?

\*　\*　\*　\*　\*　\*

"A He did say he was staying there, he indicated that he was staying there to save the cost to them; he indicated, I guess, that would be probably living off of her if he was staying there, but as to amounts of money or anything he never indicated that to me."

We do not agree with the construction which the respondents urge.

We fail to see how reasonable minds could differ as to the adequacy of the proof of the fact that the employee was the sole support of the children from the date that the petitioner relinquished her employment to the date of his death. The first award should not have been modified.

In view of our opinion as to the lack of the effect of the statement which the petitioner gave to the bank, a lack of effect in the light of all of the evidence which was presented, we need not comment upon the interesting and highly contested method by which the statement to the bank was called to the attention of the Commission as a basis for the hearing which was held after the first award and prior to the second award.

## INTERESTED WITNESSES

At the time of the oral argument the Fund urged, as it has in other matters, that the Commission has the right to reject the testimony of interested witnesses. It urged that the petitioner and the grandmother were interested witnesses and that the Commission was free to reject their testimony. We do not agree.

We recognize that in Talley v. The Industrial Commission of Arizona, 105 Ariz.

162, 461 P.2d 83 (1969) the Supreme Court stated:

"The Commission could have disregarded petitioner's uncorroborated testimony that in 1964 he could but that in 1967 he could not work. Ireland v. Industrial Commission, 91 Ariz. 136, 370 P.2d 285." 105 Ariz. at 165, 461 P.2d at 86

We have reviewed a number of Arizona cases including the following: Lentz v. Landers, 21 Ariz. 117, 185 P. 821 (1919); Nichols v. McClure, 23 Ariz. 27, 201 P. 95 (1921); Little v. Brown, 40 Ariz. 206, 11 P.2d 610 (1932); Carr v. Florian, 43 Ariz. 149, 29 P.2d 728 (1934); Davis v. Industrial Commission of The State of Arizona, 46 Ariz. 169, 49 P.2d 394 (1935); Mac Rae v. Mac Rae, 57 Ariz. 157, 112 P.2d 213 (1941); Silva v. Traver, 63 Ariz. 364, 162 P.2d 615 (1945); State v. Hicks, 69 Ariz. 208, 211 P.2d 473 (1949); In re Gary's Estate. DeLaney v. Gary, 69 Ariz. 228, 211 P.2d 815 (1949); Clint v. Northern Assur. Co., 71 Ariz. 44, 223 P.2d 401 (1950); Ratley v. Industrial Commission, 74 Ariz. 347, 248 P.2d 997 (1952); Estate of Wainola-Hudgins v. Ristolainen, 79 Ariz. 342, 289 P.2d 692 (1955); In re Schade's Estate, 87 Ariz. 341, 351 P.2d 173 (1960); Buzard v. Griffin, 89 Ariz. 42, 358 P.2d 155 (1960); Ireland v. The Industrial Commission of Arizona, 91 Ariz. 136, 370 P.2d 285 (1962); England v. Valley National Bank of Phoenix, 94 Ariz. 267, 383 P.2d 183 (1963); Ft. Mohave Farms, Inc. v. Dunlap, 96 Ariz. 193, 393 P.2d 662 (1964); Talley v. The Industrial Commission of Arizona, 105 Ariz. 162, 461 P.2d 83 (1969); Reliable Electric Co. v. Clinton Campbell Contractor, Inc., 10 Ariz. App. 371, 459 P.2d 98 (1969); and Carabetta v. The Industrial Commission of Arizona, 12 Ariz.App. 239, 469 P.2d 473, decided 21 May 1970. While there are statements which appear to support the contentions of the Fund, it is our opinion that in most of the cases the apparently outright statement was followed by a recitation of facts tending to cast discredit upon the testimony of the interested witness. This

is the situation in the Ireland case cited by our Supreme Court in the above quotation from Talley.

Our disagreement with the position of the Fund in our opinion finds support in the code provisions of Arizona.

A.R.S. § 12-2201 reads as follows:

"§ 12-2201. Persons who may be witnesses

"A. Every person, including a party, may testify in any civil or criminal proceeding, or before any person who has authority to receive evidence, *except as otherwise expressly provided by law.*

"B. A person shall not be incompetent to testify because he is a party to an action or proceeding or interested in the issue tried, or because he has been indicted, accused or convicted of a crime, or because of his religious opinions, or because he does not have any religious belief." (Emphasis added)

A.R.S. § 12-2202 specifies two classes of "persons who may not be witnesses."

A.R.S. § 12-2231 is the first of a series of code sections under the heading "Privileged Communications". See also the requirement that the evidence of one spouse in a divorce action must be "corroborated by other evidence," a provision of A.R.S. § 25-317, subsec. B. There are certain limitations in establishing parentage contained in A.R.S. § 12-631, subsec. C. Under specified circumstances A.R.S. § 12-2251 places restrictions on the testimony of executors, administrators and guardians. We are familiar with the requirements of A.R.S. § 44-101, Arizona's statute of frauds.

We find disqualifying statutes. We find no statute which states that when a person is qualified to be a witness, the trier of the facts is at liberty to completely disregard or reject the testimony of that witness based solely upon the fact that the witness has an interest. We believe that a review of the case law compels the same conclusion.

We quote from Ratley v. Industrial Commission, (supra):

"In deciding whether there is substantial evidence to support the commission's findings, we are guided by the rule that the trier of the facts is the judge of the witness' credibility and is not required to accept the uncontradicted evidence of an interested party, but there are exceptions. The trier of the facts may not arbitrarily reject such uncontradicted evidence when nothing intrinsic in the evidence itself or extrinsic in the circumstances casts suspicion thereon. Further, where evidence of an interested witness is corroborated by a disinterested witness, a rejection of that evidence amounts to arbitrary action by the court. In re Gary's Estate, 69 Ariz. 228, 211 P.2d 815; Stanley v. Moan, 71 Ariz. 359, 227 P.2d 389." 74 Ariz. at 349 and 350, 248 P.2d at 998 and 999

A statement of like import is found in Buzard v. Griffin, (supra):

"In this jurisdiction the triers of fact may not arbitrarily reject evidence where there is nothing intrinsic in the evidence itself or extrinsic in circumstances which cast suspicion upon the testimony. Ratley v. Industrial Commission, 74 Ariz. 347, 248 P.2d 997; In re Gary's Estate, 69 Ariz. 228, 211 P.2d 815. The trial judge was not at liberty to reject the uncontradicted positive testimony of A. P. Buzard." 89 Ariz. at 49, 358 P.2d at 159

A portion of § 3 of Udall's Arizona Law of Evidence is as follows:

"As a general rule the jury or other trier of fact is the sole judge of the witnesses' credibility and is not required to accept the evidence of an interested party, even though uncontradicted. But this general principle is qualified by several important exceptions. *The trier of fact may not arbitrarily reject uncontradicted evidence of a party when nothing intrinsic in the evidence itself or extrinsic in the circumstances casts suspicion upon it.* Nor may it be re-

jected where it is corroborated by a disinterested witness or an independent document." (Emphasis added) At p. 10

From Clark v. Industrial Commission of Arizona, (supra), we quote:

" 'The Commission has no right to disregard the testimony of an interested witness unless it be that the testimony had been impeached or contradicted or unless it be that the circumstances are such as to cast doubt upon the credibility of that testimony.' Quirk v. Industrial Commission, 3 Ariz.App. 84, 86, 412 P.2d 81, 83 (1966) (Review Denied). The foregoing quotation from Quirk was taken from Dabbs v. Industrial Commission, 2 Ariz.App. 598, 411 P.2d 36 (1966). See also Charles v. Industrial Commission, 2 Ariz.App. 202, 407 P.2d 391 (1965) and Womack v. Industrial Commission, 3 Ariz.App. 74, 412 P.2d 71 (1966)." 10 Ariz.App. at 490, 460 P.2d at 26

In our opinion, the standard of proof before The Industrial Commission is a preponderance of the evidence. "In determining whether this burden has been met, the Commission, as triers of fact, is subject to the same rules of law as to the credibility of witnesses and the weight to be given to their testimony as a court or jury in a civil action." Smith v. Aluminum Co. of America, 62 Ariz. 160 at 167, 155 P.2d 628 at 631 (1945); Davis v. Industrial Commission of Arizona, (supra); see also Ratley v. Industrial Commission, (supra).

The Commission action of 14 July 1969 prior to the award of 18 July 1969 discloses that Commissioner Thoeny explained his vote as follows, "minor children *not* totally dependent on Vance G. Fish." Commissioner Bailey explained his vote, stating, "because of total discrepancy in testimony claimant has failed to sustain burden of proof." These comments were in relation to the dependency of the children. At the same time the award found, though not necessary in view of the conclusive presumption in favor of the petitioner, "that said employee left sur-

viving him and *totally dependent* upon him for support at the time of his injury, his wife * * *." (Emphasis added)

 We hold that the Commission could not *reject* the testimony of the petitioner and the grandmother and was privileged to weigh their testimony. We hold that the corroboration of their testimony, including the testimony of the employer's president, requires that the minor children be held to have been totally dependent stepchildren at the time of the injury and death of the employee.

 It is our opinion that a petition for rehearing which is filed in relation to an award which was entered after a formal hearing may limit the areas of inquiry on the rehearing, in this instance the matter of the children's entitlement to death benefits. The whole of the potential issues are not reopened for a trial *de novo* as in the situation where there is a timely petition for a hearing which is addressed to an award which was entered without a prior formal hearing. In our recent opinion in German v. The Industrial Commission of Arizona, 12 Ariz.App. 301, 469 P.2d 867, filed on 27 May 1970, we discussed the latter situation and the effect of Russell v. The Industrial Commission of Arizona, 104 Ariz. 548, 456 P.2d 918 (1969) upon Industrial Commission Rule 38, therein quoted in full. In part, Rule 38 is as follows:

> "38. Grounds for Rehearing Must Be Set Forth: Such application must be verified on oath, and must set forth specifically and in detail the grounds on which the applicant therefor considers such award or decision to be unjust or unlawful and every issue to be considered by the Commission.
>
> * * * * * *
>
> "(b) Every ground or complaint, or defense, to such award or decision not so specified in such petition shall be deemed fully and finally waived."

It is our view that Russell does not supersede Rule 38 in situations wherein there is a request for a rehearing in relation to an award, not final, an award entered after a formal hearing. It is our opinion that under the Rule and in this situation the issues can be limited by the language set forth in the petition for rehearing.

The entitlement of the minor children to death benefits was the only issue presented in relation to the award of 7 October 1968 and the only portion of that award changed by the award of 18 July 1969. The minor children's entitlement is the only ultimate issue presented to us in this matter.

That portion of the award of 18 July 1969 which denies death benefits to the minor children is set aside.

DONOFRIO, P. J., and CAMERON, J., concur.