471 P.2d 305

Patricia E. COLLINS, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

State of Arizona-State Auditor, Arizona State Welfare Department, Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. 1 CA–IC 330.

Court of Appeals of Arizona, Division 1, Department A.

July 1, 1970.

Rehearing Denied Sept. 25, 1970.

Review Denied Nov. 17, 1970.

Morgan & Jerome, by Donald J. Morgan, Phoenix, for petitioner.

Donald L. Cross, Chief Counsel, Phoenix, The Industrial Commission of Arizona, for respondent.

Robert K. Park, Chief Counsel, by Ronald M. Meitz, Phoenix, State Compensation Fund, for respondent Carrier.

STEVENS, Judge.

This case is before us on a writ of certiorari to review the lawfulness of an award of The Industrial Commission. The Commission was called upon to determine whether the petitioner suffered a permanent disability in the form of a continuing allergic reaction to both wet and dry paint as the result of an industrially related accident which occurred on 6 December 1967. After a formal hearing held on 20 May 1969, the Commission entered an award dated 17 July 1969 affirming the "Findings and Award for Temporary Disability" entered on 20 August 1968. This claim was decided under the law as it existed prior to 1 January 1969.

On 6 December 1967 petitioner was working in an office which was being painted with a latex-base paint. She suffered symptoms which caused her to seek medical treatment from Dr. Person, her family physician. Dr. Person was engaged in general practice. He determined that the complaint was due to an allergic reaction to the paint fumes. The Commission accepted her claim on 28 December 1967.

The petitioner returned to work in January of 1968, but was able to work only two and one-half days before there was a recurrence of the same complaint. Petitioner again left work and returned to Dr. Person. At the request of Dr. Person, petitioner was referred to an internist, Dr. Fisher, to determine if there were any objective symptoms of her complaint. In his report Dr. Fisher concluded that there was "no evidence of tracheobronchial or pulmonary diseases" and that the petitioner was "no longer disabled from the exposure" to paint. Dr. Person returned petitioner to work on 27 February 1968, but she suffered the same reaction when she returned to the painted room, whereupon she returned to Dr. Person.

On the third visit Dr. Person performed what he characterized as a "specific allergy test" on the petitioner. The test consisted of placing a drop of wet paint on one skin area and a piece of dry paint on another skin area. The result of this test was an inflammation and reddening of the skin in those areas. Dr. Person concluded that the petitioner had developed a permanent allergy to the type of paint used in her place of employment, and in nearly ev-

ery other building, in both its wet and dry forms. He ordered her to permanently avoid entrance into any structure where that type of paint was present. Since that time petitioner reports that the same condition develops as at the time of initial exposure whenever she enters a structure which has paint on its interior walls. On this ground petitioner alleges that she is permanently disabled.

The Commission requested that Dr. Fisher evaluate the reports of Dr. Person and petitioner and advise it of his conclusions. Dr. Fisher's report, dated 6 April 1968, was that the petitioner would react to many chemical agents if they were placed on her skin, and he suggested that petitioner be seen by an allergist and further testing be done to resolve "the nature of her complaints and degree of industrial involvement."

On 9 April 1968 the Commission entered a "Findings and Award for Continuing Benefits and Establishing Average Monthly Wage." Finding D. was, "That applicant was able to return to employment effective April 3, 1968." This Findings and Award was timely protested.

Petitioner was referred to Dr. Romero, an allergist, by the Commission. After an examination on 23 April 1968, Dr. Romero suggested further tests and stated that, "Her previous tests to concentrated paint could have resulted in serious chemical burn rather than positive allergic reaction." The petitioner refused these tests on the grounds that her attorney and physician advised her never to be tested due to the severity of her reaction. Dr. Person filed a formal protest on 24 April 1968 to petitioner's breathing powdered paint or paint fumes but suggested that a minor test might be done.

On 10 May 1968 petitioner filed a request for a hearing on the award entered on 9 April 1968, stating:

"Applicant is not able to return to work and applicant has sustained a total permanent disability."

The Commission referred the petitioner to a second allergist, Dr. Mackoff, on 31 May 1968. Dr. Mackoff saw her on 14 June 1968. In his report he commented that the tests performed by Dr. Person could mean either a primary form of irritation or it could have been a true allergic reaction. He further suggested that "[a]n allergic study and/or handling or environmental and dietary manipulation would, I think, be in order."

The Commission issued a "Findings and Award for Temporary Disability" on 2 August 1968. Therein it was found:

"1. That the above-named applicant on December 6, 1967 sustained a personal injury by accident arising out of and in the course of his [sic] employment.

\*        \*        \*        \*        \*        \*

"3. That said personal injury entitled said applicant to accident benefits 'medical expenses' until August 1, 1968.

\*        \*        \*        \*        \*        \*

"6. That the medical evidence reflects that said applicant has no physical or mental disability resulting from said accident, and the Commission so finds."

There was an award for total temporary and for partial temporary disability. This portion of the award terminated disability payments as of 1 July 1968. This is the "Findings and Award" which was affirmed by the Commission subsequent to the hearing held on 20 May 1969. All issues raised by the "Petition for Hearing" filed in protest to the awards of 9 April 1968 were referred for hearing. On 14 August 1968 petitioner retained present counsel and a protest of the award of 2 August 1968 was filed. A "Petition for Rehearing" filed 29 August 1968 stated:

"The award is contrary to the evidence and applicant has a re-occuring allergy and would possibly have fatal reactions if further tests were made. The conclusions are not supported by substantial evidence as all of the evidence of a medical nature shows a continuing reaction

and a permanent neurodermatitis allergic reaction."

The hearing was held on 20 May 1968.

An award of the Commission must be sustained unless there is no reasonable evidence upon which it could have reached its conclusion and we may not set aside the Commission's findings if they are reasonably supported by the evidence. Valdon v. Industrial Commission of Arizona, 103 Ariz. 547, 447 P.2d 239 (1968); see also Enyart v. Industrial Commission of Arizona, 10 Ariz.App. 310, 458 P.2d 514 (1969). The burden of proof is upon the applicant for compensation to show affirmatively by a preponderance of the evidence that she is entitled to compensation and the Commission is not required to disprove her contention. Mead v. American Smelting & Refining Co., 90 Ariz. 32, 363 P.2d 930 (1961). It was incumbent upon the petitioner to show that the alleged continuing allergic condition to which she claimed she was subject, was caused or aggravated by her previous compensable accident. When medical evidence is presented, and it is the only medical evidence, it may not be totally disregarded by the Commission or this Court. Enyart. The crucial issue is whether, as petitioner contends, the Commission is bound by the medical opinion of her personal physician when it is the only positive testimony in the case by virtue of the fact that the petitioner refused to permit any other doctor to perform tests which they believed reasonable and necessary to determine the basis of her claim of permanent disability.

Analyzing all of the evidence in the case, we find that with the exception of Dr. Person the expert witnesses, upon whose testimony the case must turn, all agree that it is impossible to relate petitioner's present condition to her industrial accident without further tests. They further agree that there are certain methods which would aid in determining the relationship between her present condition and the accident.

The petitioner, acting under the advice of Dr. Person and her attorney, positively refused to permit the tests to be made on the grounds that they would endanger her life and health. At the hearing Dr. Romero testified that tests could be made without endangering the petitioner. His testimony went further:

"Q. Would you undertake to perform them?

"A. Yes."

At another point he testified:

"Q. You testified that you would be responsible, felt as though you could be responsible for any test given to claimant concerning her allergic reaction?

"A. Yes, sir.

"Q. And the statement by Dr. Person that in tests of this sort, I hope I am quoting correctly, could possibly cause death. What is your opinion of that statement?

"A. Not if done under the proper conditions."

A.R.S. § 23–1026 requires an employee entitled to compensation to submit himself for medical examination. In Cole v. Town of Miami, 52 Ariz. 488, 83 P.2d 997 (1938), our Supreme Court held that there was a limit beyond which the Commission could not require an examination to go. The Court went on to say:

"After careful consideration, we are of the opinion that since it is incumbent upon a claimant to prove affirmatively that he is entitled to compensation, if he declines to allow an examination, which has been requested by the commission, to be made, he cannot claim the benefit of the statute, unless it clearly appears the examination, under all the circumstances, was an unreasonable one. Where the medical witnesses, who are of course the best qualified to determine such a matter, disagree as to the danger and necessity of the examination, we think the fi-

**424**

nal decision must be left, with other decisions on questions of fact, to the commission. It is true that in some cases this may work an injustice to a claimant, but a contrary rule would, in our opinion, produce far greater injustice." 52 Ariz. at 499, 500, 83 P.2d at 1002.

We think that it was not necessary for the Commission to make a formal request that this examination be made when the petitioner, through her doctor and her attorney, entered a formal protest with the Commission against any further tests, requiring otherwise would only be requiring a useless act.

Petitioner's case rests on the sole testimony of Dr. Person who based his conclusions on the results of the tests which he performed. The validity of that test for positively determining the presence of an allergy was denied by the other medical experts who testified. In our opinion we cannot say, as a matter of law, that the further suggested testing was so arbitrary and unreasonable as to be beyond the jurisdiction of the Commission to make, and in its absence we cannot say petitioner's alleged permanent disability was shown affirmatively to be the result of her industrial injury. We hold that petitioner did not sustain her burden of proof.

The petitioner raised the issue that there was a psychoneurotic overlay which was not the subject of any findings. This issue was not presented directly for decision by the Commission, and a review of the record does not disclose sufficient facts which would support a finding as to its existence or absence. Under these circumstances, we hold that the action of the Commission in not making a finding on the matter of a psychoneurotic overlay was proper.

Award affirmed.

DONOFRIO, P. J., and CAMERON, J., concur.