495 P.2d 1344

AETNA CASUALTY AND SURETY COM-
PANY and Peter Kiewit Sons' Com-
pany, Petitioners,

v.

The INDUSTRIAL COMMISSION of
Arizona, Respondent,

Salomon Madril, Respondent Employee,

Fisher Enterprises, Inc., Respond-
ent Employer,

State Compensation Fund, Respond-
ent Carrier.

No. I CA–IC 589.

Court of Appeals of Arizona,
Division 1,
Department B.

April 18, 1972.

Rehearing Denied May 24, 1972.

Review Denied July 13, 1972.

**138**

Shimmel, Hill & Bishop, P. C. by Merton E. Marks, Phoenix, for petitioners.

William C. Wahl, Jr., Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Machmer & Schlosser, Ltd. by Ronald M. Meitz, Phoenix, for respondent employer and carrier.

JACOBSON, Judge.

The primary question raised by this appeal by writ of certiorari deals with the sufficiency of the evidence to sustain the Industrial Commission's award.

On January 9, 1968 the claimant, Salomon Madril sustained a back injury while lifting a pipe during the course of his employment with Fisher Enterprises, Inc. who was insured for workmen's compensation by the State Compensation Fund (Fund). On May 15, 1969 the Industrial Commission in awarding Madril temporary disability found that he had no physical or mental disability resulting from the industrial accident. Thereafter Madril timely protested the award and requested a hearing.

Approximately twenty months following his first injury, on September 2, 1969, and prior to the hearing on his first injury, Madril suffered another back injury in an attempt to dislodge a jackhammer which had become wedged in asphalt. The injury occurred while Madril was employed by Peter Kiewit Sons' (petitioner) who was insured for workmen's compensation by Aetna Casualty & Surety Co. (Aetna). Initially, Aetna denied Madril's claim on the grounds that the second injury was a continuing one, not a new one, and the entire disability should be charged to the Fund, the insurer of Madril's employer at the time of the first injury. Later, Aetna paid Madril benefits after it and the Fund entered into an indemnity agreement whereby the Fund agreed to indemnify Aetna if it were subsequently determined that the Fund was legally responsible for the second injury.

A hearing was held on February 24, 1970 on Madril's protest of the Fund award of May, 1969. The only notice of the hearing received by Aetna's counsel was a telephone call shortly before it commenced. At the beginning of the hearing this counsel moved for a continuance in order to allow him time to prepare properly but the referee denied the request. At the close of the hearing the referee granted Aetna's request for a continuance to permit a physician to testify. The second hearing occurred on June 24, 1970.

The referee who had conducted both the February 24 and the June 24 hearings rendered his findings on August 21, 1970 which affirmed the Fund award. Though both claims (the January, 1968 and September, 1969 injuries) were never formally consolidated, they were nevertheless treated as consolidated for hearing purposes but the findings of August 21, 1970 made no mention of the second injury. The same referee, acting in the capacity of a hearing officer, on August 27, 1970 rendered an award on the September 2, 1969 injury, hereafter referred to as the Aetna award. This injury was held compensable and a permanent disability was found to have resulted therefrom. In the August 27, 1970 award, no reference was made to the earlier Fund award.

The Commission on September 17, 1970 affirmed the Fund award. From this award no protest, petition for rehearing, or writ of certiorari were filed. On October 7, 1970, the Commission affirmed the Aetna award which only named Kiewit and Aetna as defendants. From this award petitioners filed a petition for writ of certiorari, naming the respondent employer Fisher and the Fund and joining both claims.

■ The Court is initially confronted with a jurisdictional issue raised by the respondent Fund, the essence of which is as follows: The Commission's award of September 17, 1970 (the Fund award) did not name petitioners as parties thereto; the award was not protested and no one filed a petition for writ of certiorari; since the two claims were never consolidated, the Fund award became final and the doctrine

of *res judicata* prevents the Court from reviewing that award; as to the Aetna award, the respondents were not parties to that action, and therefore the respondents are not proper parties to the appeal of that award.

■ Though respondents' proposition raises some interesting questions, we need not consider them for there are other issues which are dispositive of this appeal. By this writ of certiorari, we are asked to review the lawfulness of the Commission's award dealing with the Aetna claim on the basis of the sufficiency of the evidence to sustain that award and whether the referee abused his discretion by denying Aetna a continuance. The petition for writ of certiorari was timely filed in accordance with A.R.S. § 23–951, subsec. A and the petitioners who were affected by the award are necessary and proper parties to this appeal as is the respondent Industrial Commission. We therefore must consider this appeal even if the Fund is not a proper party before us.

Petitioner initially contends that the referee's denial of its request for a continuance was an abuse of discretion and thus prejudicial because counsel did not have adequate time to prepare for the hearing due to lack of timely notice.

■ The February 24, 1970 hearing was conducted under the pre-1970 Rules of Procedure before the Industrial Commission. Former Rule 31 required the Commission to notify all interested parties in writing of the time for any hearing. Former Rule 41(c) provided "that all interested parties shall be given at least ten days' notice in advance of the time and place set for the hearing." Since Aetna's notice prior to the commencement of the hearing amounted to just minutes, these rules were therefore not complied with and we hold this to be error. *See*, Mueller v. Industrial Commission, 9 Ariz.App. 147, 450 P.2d 113 (1969). But we fail to see how Aetna was prejudiced by this error because the referee granted a continued hearing in this matter. If petitioner felt

that it did not adequately cross-examine the witnesses at the first hearing for lack of proper preparation due to lack of timely notice, then counsel could have requested at the close of the hearing that the witnesses reappear at the subsequent hearing. This petitioners failed to do. We therefore hold that the error committed by the referee in failing to postpone the hearing was harmless error. Young v. Hodgman & Mac Vicar, 42 Ariz. 370, 26 P.2d 355 (1933).

As to the merits of the case, Aetna contends that Madril had the burden of proving by a preponderance of the evidence that his present injury was a result of the second accident and the evidence was insufficient to support the Commission's finding that Madril had sustained a new injury as a result of the September, 1969 episode. Petitioner's argument continues by stating that the medical evidence showed that the injury was a continuation of the earlier one for which the Fund is legally responsible, because the Fund was the insurer of Madril's employer (Fisher) at the time of the first injury.

■ The law is well settled in Arizona that a claimant has the burden to affirmatively show that he is entitled to disability compensation. Russell v. Industrial Commission, 104 Ariz. 548, 456 P.2d 918 (1969). Equally well established is the rule that the standard of proof before the Industrial Commission is a preponderance of the evidence. Fish v. Industrial Commission, 12 Ariz.App. 486, 472 P.2d 97 (1970). If an award is reasonably supported by the evidence, an appellate court may not set aside that award. Collins v. Industrial Commission, 12 Ariz.App. 420, 471 P.2d 305 (1970).

In considering whether there was sufficient evidence to sustain the award it is necessary to examine in some detail just what the medical testimony revealed. A neurosurgeon who treated Madril after the first injury diagnosed his condition "as low back sprain." The doctor could find "no objective evidence of any nerve root im-

pingement." Furthermore, he was of the opinion that the injury did not cause a protruded disc. In April, 1968 the doctor released Madril "without any physical disability" relating to the January, 1968 injury.

An orthopedic surgeon who examined Madril in April of 1968 but did not perform surgery, stated that the first accident "could have" caused a herniated disc but the objective findings did not substantiate such a condition. The doctor was of the opinion that the patient did not have a "disc protrusion" and he "could recover from the injury without permanent impairment of function."

Dr. McGovern, a specialist in electromyography conducted a myographic study of Madril in October, 1969 following the September injury. His findings revealed an abnormality of S–1 nerve root damage. However, an earlier EMG performed by Dr. Colachis in February of 1968 did not reveal any abnormality in the same area tested by Dr. McGovern. It was Dr. McGovern's opinion that in all probability if such an abnormality had been present at the time Dr. Colachis conducted an EMG, the abnormality would have appeared in his study.

The orthopedic surgeon who performed corrective surgery upon Madril after the second injury, was of the opinion that the patient had suffered a herniated disc in the January, 1968 injury and as a result of the second episode he "suffered a further herniation of that disc" which had been weakened by the first injury. The doctor in support of his opinion stated that it was a "reasonable medical probability that the herniated disc" which he found during surgery "could not occur in a period of six weeks." The doctor's findings during surgery confirmed the conclusion which he had reached during his first examination on September 5, 1969. An excerpt from the transcript of the June hearing is illustrative of the doctor's opinion:

"Q.   Doctor, based upon the history, the subjective complaints, the past history, your examination, and the x-rays which you took, did you form an opinion as to what condition Mr. Madril was suffering from at the time of your examination on September 5, 1969?

"A.   It was my opinion that he did have nerve root pressure, lower right, and from the past history, with continuous symptoms since 1–9–68.

"It was my opinion that he had had an *aggravation of this previously existing condition . . . .*" (Emphasis added.)

The Fund takes the position that Dr. Bishop's testimony does not create a conflict in the medical testimony, and does not support Aetna's position but rather the testimony supports its own point of view: Madril had a preexisting condition—a weakened disc caused by the first injury—and the second injury was an aggravation of the previously existing condition and that Aetna is legally responsible for that aggravation.

As authority for its position the Fund cites Murray v. Industrial Commission, 87 Ariz. 190, 349 P.2d 627 (1960). In *Murray* the court in discussing proximate cause stated:

"[I]n the field of Workmen's Compensation, the employer takes his employee as he is. In legal contemplation, if an injury, operating on an existing bodily condition or predisposition, produces a further injurious result, that result is caused by the injury." 87 Ariz. at 199, 349 P.2d at 633.

In view of all the medical evidence and in particular the testimony of the performing surgeon, we are in agreement with the respondent's contention that the second injury was a new one and not a continuing injury. We therefore find that the award is reasonably supported by the evidence.

Award affirmed.

HAIRE, C. J., and EUBANK, J., concur.