456 P.2d 918

Nathaniel RUSSELL, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, City of Tucson,
Defendant Employer, Respondents.

No. 9542–PR.

Supreme Court of Arizona.

In Banc.

July 10, 1969.

Hirsch, Van Slyke & Ollason, Tucson, for petitioner.

Spencer K. Johnston, Tucson, ·for respondent Industrial Commission of Arizona.

HAYS, Justice.

This case is before us on a petition for review of a decision of the Court of Appeals, Russell v. Industrial Commission, 8 Ariz.App. 563, 448 P.2d 407 (1968), which set aside an award of the Industrial Commission as contrary to the evidence before the Commission. We vacate the decision of the Court of Appeals and affirm the award of the Industrial Commission.

On February 3, 1964, petitioner was engaged in the performance of his duties as a police officer of the City of Tucson when he was injured under circumstances indicating third party liability. Petitioner elected to pursue his remedies against the third party, preserving certain rights before the Commission. (See A.R.S. § 23–1023 [1956], as amended, A.R.S. § 23–1023 [1969]).

He was periodically examined by several physicians including one Dr. Fonseca, a neurological surgeon. Without a formal hearing the Industrial Commission entered

a "Findings and Order" on March 17, 1965. The findings stated:

"That said applicant was discharged from medical treatment on March 1, 1965, with no permanent disability.

That said applicant was not disabled to work in excess of seven days after said injury and therefore not entitled to compensation."

The Commission awarded accident benefits and reserved jurisdiction to determine if there was a deficiency between the petitioner's entitlement under the Arizona Workmen's Compensation Law and any recovery from the third party. The order also contained a 20 days clause in which to apply for a rehearing. Petitioner filed a timely notice of protest and a petition for a hearing.

Dr. Fonseca again examined the petitioner and reported on June 7, 1965, that his headaches were less frequent and that relief was secured by non-prescriptive pain relievers. The doctor reported that the petitioner "also had some chronic discomfort in the posterior neck which he describes as a tension sensation." A neurological examination of the patient was normal, however, and there was no limitation of motion of the cervical spine. The doctor concluded by stating: "He has never been actually disabled as a result of this injury and I think his case could be closed with no disability at the present time."

A hearing was scheduled for February, 1966. Before the hearing was conducted, petitioner returned to Dr. Fonseca on January 19, 1966, complaining of an aggravation of his condition. Shortly after this examination, Dr. Fonseca wrote the Commission:

"This patient's headaches are persistent and recently they have become increasingly localized to the left posterior neck and shoulder and parascapular area in the form of pain and soreness at time with super-imposed shooting pains in this distribution."

\* \* \* \* \* \*

"His neurological examination shows depressed reflexes throughout. There is no real limitation of motion of the cervical spine, but there is some pain on hyperextension and lateral tilting of the left, referred to the parascapular area and to the trapezius."

\* \* \* \* \* \*

"It would appear now that the current symptoms are the result of the injury of 2–3–64. The patient is no longer working for his previous employer, and is now active in the real estate business."

The doctor inquired as to whether the claim was still open so that he could authorize treatment.

A hearing was held on February 2 and 23, 1966, at which Dr. Fonseca testified that as of January 19, 1966, there had been a change in the petitioner's condition which necessitated further medical evaluation and treatment. The doctor opined that the case should remain open for treatment and that perhaps in 3–6 months his condition would become stationary. When asked if he anticipated a permanent disability, he stated:

"I would say that he probably will not have a permanent disability. I think that he may have some tendency for an indefinite period of time to have recurrent discomfort in his neck, but I think that with the certain endoctrination (sic) in the management of this by the patient himself, such as exercises and traction and so on, that this could be kept under reasonable control."

Petitioner testified as to the headaches and left shoulder problem. He stated that he had not missed work because of the accident nor had the injury anything to do with his leaving the Tucson Police Department a year after the accident. He felt he could still do the work of a police officer if he wanted to, but had rather changed jobs in order to resume his collegiate studies.

The Industrial Commission took action on May 3, 1966, in a "Decision Upon Rehearing and Findings and Award for New, Additional or Previously Undiscovered Disability." Therein it referred to the March 17, 1965, action as "Findings and Award" and affirmed the same. By the action taken, the Commission found that: "1) Applicant's physical condition remained essentially the same between March 1, 1965 and January 19, 1966; 2) that applicant on or about January 19, 1966, suffered a change in physical condition, requiring additional medical treatment; 3) that said change in physical condition is not disabling and applicant is able to continue in his regular employment; 4) that applicant has new and additional disability related to the industrial episode of February 3, 1964; and 5) that applicant is entitled to further accident (medical) benefits only."

The Commission action contained a 20 day clause, from which no timely petition for rehearing was made. However, petitioner was referred to Dr. Fonseca for further care, and the doctor was authorized to secure a consultation with a Dr. Toll, an orthopedic surgeon.

After an X-ray and a myelogram were taken, Dr. Toll reported:

"It is my impression that this man sustained a cervical strain as a result of the accident in 1964 and he now presents with a mild residual of the same. I believe that no active treatment other than continued observation is indicated. He most probably will continue to have intermittent symptoms of neck pain with rotation as he describes and this may be permanent in degree.

I believe he should be re-evaluated in 4–6 months for purposes of final disposition."

A group medical consultation was conducted in February, 1967, in which Drs. Fonseca, Toll and two others participated. This consortium of doctors concluded that the

"* * * claimant's condition has reached a stationary level in recovery from the injury of 2–3–64. We acknowledge the patient has intermittent discomfort in his neck which can be attributed to the injury but we do not feel at this time we have enough physical evidence and abnormalities in physical examination to warrant stipulation of any percentage of physical disability. We do not believe he is disabled to perform the work he did at the time of the injury. The patient is to continue his program of exercises in which he has been adequately instructed.

If, at some time in the future, his condition should deteriorate or should become worse it should be reopened for additional evaluation and possibly for treatment."

Formal hearings were subsequently held on June 15 and July 12, 1967, at which time testimony of the consortium of doctors was taken. In answer to questioning the doctors again opined that petitioner had suffered no permanent disability and that his condition was "stationary" in the sense that no further treatment was required at that time.

The Commission rendered a "Decision Upon Rehearing and Final Findings and Award" on October 5, 1967, finding in part: "1) That as a result of the industrial injury of February 3, 1964, the applicant has periodically and intermittently had symptoms of pain in the neck and headaches; 2) that said symptoms have not been and are not now disabling; 3) that the applicant has sustained no permanent disability as a result of his industrial injury of February 3, 1964; 4) that the applicant's condition became stationary on May 23, 1967, requiring no additional medical treatment, and the applicant is therefore entitled to medical benefits through May 23, 1967, in the sum of $695.22; 5) that the finding that the change of condition of January 19, 1966, was not disabling became res judicata; 6) that the applicant has not been disabled for work in ex-

cess of seven days as a result of said injury and is therefore not entitled to compensation; and 7) that the Findings and Order of March 17, 1965 is supported by the evidence."

The Commission award provided for a deficiency award for petitioner should his judgment from the third party be less than the benefits awarded by the Commission. The document also contained a 30 day clause, but petitioner chose to petition for review in the Court of Appeals. On review the Court of Appeals found that findings #3, 5 and 7 of the award were erroneous.

In arriving at its conclusions, the Court of Appeals went to great lengths to alter the nomenclature and hence the procedural effect of the actions taken by the Industrial Commission, actions which in our opinion were rather clear and succinct. The Court of Appeals opinion recreates that:

> "The March 1965 action was not an award. It was merely an interim action holding the matter in abeyance pending final disposition of the personal injury action."

> \* \* \* \* \* \*

> "There being no 'Findings and Award' entered on 17 March, 1965 under the circumstances outlined in this opinion, the Commission was in error in affirming the so-called Findings and Award. It is clear that the action of 3 May, 1966, was an erroneous interim action in that without additional formal requests, the Commission proceeded to secure a more complete medical evaluation." 8 Ariz.App. at 570, 448 P.2d at 414.

We hold that the Commission action of March 17, 1965, was an award, which was in effect set aside when timely protest and petition for rehearing was taken. Further, the action of May 3, 1966, was an award which became res judicata once no timely protest and petition were filed. Finally, the Commission's authorization of a medical consultation and rehearing in 1967 had the effect of reopening the case, and

the action of October 5, 1967 was a subsequent final finding and award.

In O'Neill v. Martori, 69 Ariz. 270, 212 P.2d 994 (1949), we discussed the meaning of the term "award" as used in the Arizona Workmen's Compensation Law. Citing A.C.A. § 56–930 (1939) (as amended, A.R.S. § 23–901, subsec. 1, the statute which rules the instant case), we noted that "award" applied to any finding or decision of the Commission of the amount of compensation or benefit due an injured employee. The Commission action of March 17, 1965, specifically found that petitioner was "not entitled to compensation," and thus was an award within the meaning of the Workmen's Compensation statute.

The Commission may make an award without a hearing, as long as a dissatisfied party to the award may have a full, impartial hearing at his timely request. Martin v. Industrial Commission, 88 Ariz. 14, 352 P.2d 352 (1960). Such an award may be made on the basis of application, employer's report, and a physician's report, as long as provision is left open for formal hearing should the injured employee so desire.

> "\* \* \* The Industrial Commission has many thousand applications for compensation each year. In the vast majority of cases there is no dispute as to the compensability of the injuries or the amount of compensation due, and it has been the practice of the commission ever since its organization, where no request is made for a formal hearing, to make the awards upon the basis of the application, the employer's report, and the reports of such physicians as either party may desire to present, including that of the commission's own physicians. We think that when an award is made in this manner and acquiesced in by all of the parties that it is valid." Edens v. L. E. Dixon Construction Co., 42 Ariz. 519, 523, 27 P.2d 1107, 1109 (1934).

In the instant case, petitioner filed a timely protest and petition for rehearing

of the March 17, 1965 award. We discussed the effect of such a timely protest in Wammack v. Industrial Commission, 83 Ariz. 321, 320 P.2d 950 (1958), stating that "the granting of a first motion to rehear the award has the effect of setting aside or vacating that award and when on rehearing the cause on its merits, the subsequent award supersedes the former." Petitioner's timely motion to rehear had the effect of setting aside the March 17, 1965 award and opened the matter for a full hearing on the merits. The burden of proof on petitioner to establish a compensable disability remained the same as prior to the initial award.

At the hearing in February, 1966, all issues were open for consideration as of that date, and such was not a "reopening" but a proceeding leading to a first formal adjudication. This included the change of condition reported by Dr. Fonseca in January of 1966. Our search of the record indicates that all matters pertaining to the case were permitted to be raised by petitioner and that he was not shackled with the increased burden of proof required were he seeking to reopen the case or establish a new or previously undiscovered disability. The award of May 3, 1966, became the first formal award on the merits, superseding the Commission's earlier action.

 In making the award the Commission should not have affirmed the previous award. The practice of affirming findings set aside by the granting of a hearing or rehearing is a source of procedural confusion and should not continue. The Commission in such cases has nothing to affirm. The award entered is the first award and should so appear. But since the May 3, 1966 action specifically found no compensable disability, it was clearly an award, and was not made invalid by the Commission's questionable practice of affirming a previous, null finding.

 Petitioner's failure to file a timely protest and petition for rehearing of the May 3, 1966 action caused the findings contained therein to become res judicata as to the injuries incurred on February 3, 1964, the change of condition of January 19, 1966, and the petitioner's condition as of the date of the award. We have countless times enumerated the law as to res judicata vis-a-vis the rules of procedure before the Industrial Commission, that where an aggrieved party fails to make a timely protest of an award of the Commission he cannot later claim on petition for review to this Court that the award of the Commission was erroneous. Davila v. Industrial Commission, 98 Ariz. 258, 403 P.2d 812 (1965); Harris v. Industrial Commission, 75 Ariz. 71, 251 P.2d 890 (1952); Graves v. Industrial Commission, 71 Ariz. 74, 223 P.2d 817 (1950); Bates v. Linde, 49 Ariz. 192, 65 P.2d 655 (1937); Brown v. Industrial Commission, 48 Ariz. 161, 59 P.2d 323 (1936). An award from which no timely protest is taken becomes final once the statutory period for petitions to rehear has terminated, after which the Commission retains jurisdiction only for the purpose of altering, amending or rescinding its findings and award, upon showing of a subsequent change in physical condition of the claimant or upon showing of subsequent reduction of earning capacity. International Metal Products Div. v. Industrial Commission, 99 Ariz. 73, 406 P.2d 838 (1965).

 The Commission's May 3, 1966 award authorized further accident benefits, and shortly thereafter petitioner commenced a series of periodic treatments under the supervision of Dr. Fonseca. By authorizing a group medical consultation early in 1967, and by permitting petitioner to cross examine at formal hearings the doctors participating in that consultation, the Commission in effect reopened the case to determine if any compensable disability did in fact exist. The award of October 5, 1967, was a finding, subsequent to the hearings held incident to the group medical consultation, that petitioner was entitled to $695.22 accident benefits and

no disability compensation. We are asked to review the findings of that award.

The issue before us is whether the findings of the Commission are sustained by the evidence. On numerous other occasions, we have held that in deciding such questions we are bound to affirm an award of the Commission where the Commission's findings are reasonably supported by the evidence. "Where there is a conflict of evidence, as in the instant case, the court will not weigh the evidence, but only determine whether there is sufficient evidence to give reasonable support to the finding of the Commission." Baum v. Industrial Commission, 98 Ariz. 396, 399, 405 P.2d 880, 882 (1965).

■ We affirm the finding of the Industrial Commission that the evidence was insufficient to support the claimant's contention that he had an accident-related disability resulting in the loss of earning capacity. There was no showing that claimant had missed any work due to the accident, nor that he was unable to perform the duties of a police sergeant because of his alleged disability. Rather, petitioner testified that he left the police force a year after the accident, for personal reasons, and that he felt he was still able, at least in February of 1966, to perform the duties of a police officer if he wanted to. At the Commission hearings of June, 1967, all the doctors participating in the medical consultation testified that the claimant's neck pains, in their opinion, were not disabling nor sufficient to attach even a minute ratable permanent partial disability. The doctors all agreed that petitioner's condition necessitated no further treatment as of May 23, 1967. Petitioner did not testify at the June, 1967 hearings.

■ A claimant has the burden to affirmatively show that he is entitled to disability compensation; the Industrial Commission is not required to disprove such a claim. Helmericks v. Airesearch Mfg. Co. of Arizona, 88 Ariz. 413, 357 P.2d 152 (1960). Here petitioner offered no evidence of any disability affecting his performance or earning capacity as a police officer. At the same time all of the consulting doctors reiterated their belief that petitioner was not disabled to do police work. A similar situation was faced by this court in Scherer v. Industrial Commission, 87 Ariz. 224, 349 P.2d 786 (1960), where Justice Levi Udall wrote:

"* * * the real issue sought to be presented seems to concern the Commission's determination that petitioner could return to his employment with Motorola and that he was able to perform the duties of such employment and hence did not suffer any loss of earning capacity. There is no conflict in the medical testimony regarding Scherer's physical ability to perform the duties of a plant guard. Drs. Hartman, Goley, and Ergenbright, so testified. It is only the petitioner who claimed he could not do such work. The Commission, as trier of the fact, was at liberty to choose whom to believe * * * The mere showing that a claimant has not returned to work is not proof of the fact that he cannot work because of a physical disability arising out of an industrial accident." 87 Ariz. at p. 226, 349 P.2d at p. 788.

Petitioner has failed to sustain his burden of proving a compensable disability.

We therefore hold that the findings of the Industrial Commission are reasonably supported by the evidence and must be sustained. The award is affirmed.

UDALL, C. J., LOCKWOOD, V. C. J., and STRUCKMEYER, and McFARLAND, JJ., concur.