461 P.2d 83

Noma B. TALLEY, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona; Frank G. Murphy, John Ahearn and Bruce C. Thoeny, as members of and constituting the Industrial Commission of Arizona; and Fisher Contracting Company, Respondents.

No. 9686—PR.

Supreme Court of Arizona.

In Banc.

Nov. 7, 1969.

Chris T. Johnson, Phoenix, for petitioner.

Donald L. Cross, Chief Counsel, Phoenix, for respondent The Industrial Commission of Arizona.

John S. Schaper, Phoenix, for respondent Fisher Contracting Co.

STRUCKMEYER, Justice.

This statutory certiorari is by Noma B. Talley to review certain findings of the Industrial Commission of Arizona fixing his average monthly wage. The Court of Appeals, 9 Ariz.App. 308, 451 P.2d 886, set aside the Industrial Commission's final award based on the findings. We granted review. Opinion of the Court of Appeals vacated and award affirmed.

Noma B. Talley on November 9, 1964, while an employee of the Fisher Contracting Company, was operating a Caterpillar tractor from which he was thrown, sustaining lacerations of the head and face and neck and back strain. He presents two questions for review, the first being wheth-

er petitioner had a greater loss of earning capacity than that found by the Industrial Commission.

On April 25, 1967, the Commission entered an award which was in effect that petitioner had no loss of earning capacity arising out of the accident. On June 26, 1968, the award here being tested was entered. It found a reduction in earning capacity and fixed compensation for unscheduled permanent disabilities in the amount of $34.41 per month. The material portions of the findings and award are:

"4. That the applicant has sustained a 17.26% reduction on earning capacity and is therefore entitled to an award of $34.41 per month * * *.

5. That the aforesaid determination that the applicant has sustained a 17.26% reduction in earning capacity is based upon the following facts:

* * * * * *

, (e) As a result of the industrial accident of November 9, 1964, applicant sustained a 10% physical functional disability.

(f) Following his release from medical treatment, the applicant returned to his regular employment for a period of six weeks, including a good deal of overtime; and thereby earned the sum of $913.87. He then worked for a continuous period of 13 weeks, including a good deal of overtime, and in that time earned a total of $5,183.33. However, the testimony indicates that this latter job was exceptional in that it did not involve the heavy work normally required of a heavy equipment operator."

The sequence of events leading up to this award are: On September 16, 1965, a board of medical consultants found that petitioner's condition was approaching stationary and expressed the view that he was capable of performing his former job as a heavy equipment operator. Sometime either then or immediately thereafter, he developed a painful wrist which was unrelated to his industrial injury. Consequently, it was not

until January 12, 1966, that petitioner was directed to return to work. He was not able to get a job until June 9, 1966, for the reason that construction work was slow in getting started after the winter months and there were many men in the union hall. He stated, "You just had to take your turn." He worked for Tanner Brothers Contracting Company until August 9, 1966, when he went to work for R. H. Fulton, Contractor, on a pipeline construction job until November 9, 1966.

At a hearing held on December 20, 1966, Carl Lind, Business Representative of Local #428, International Brotherhood of Operating Engineers testified:

" * * * there is no such thing as a slow or soft or an easy job in the heavy construction industry, highway work. Your dozer operators are moving constantly, have to move; it's rough work. It is no smooth work, it's a constant beating. Generally speaking they work nine hours a day; some cases eight, some cases ten, but generally speaking it's nine hours, and it's highball all the way."

While with R. H. Fulton the work was easy in that petitioner did not have much to do. Principally, they needed a "Cat" operator standing by so that when they did need him he was available. This was petitioner's last job as a heavy equipment operator.

At a hearing on December 26, 1967, he testified that while with the Tanner Brothers Contracting Company, his back hurt, " * * * I hurt so bad I couldn't hardly get off that machine. I couldn't get straight when I got off of it. At night I couldn't sleep." Petitioner after the Fulton job applied for repair work at a help yourself laundry but didn't take the job, stating that "I didn't think I was capable of doing the work with the injuries I had." He also applied at a service station but didn't get the job because "Well, he didn't think I could stand on my feet on that concrete all day and do the job, waiting on the customers." Petitioner's testimony was that he did not have any back problems before he was injured but that now his back hurt all the time.

The evidence favorable to sustaining the Commission's award establishes that in 1964, when injured, petitioner was a man of 61 years of age. X-rays three weeks after the accident on November 30, 1964, did not show any evidence of bone injury to the spine. We quote from the X-ray report since it has unquestionable significance in support of the Commission's findings and award:

"1441:

CERVICAL SPINE: Anteroposterior, lateral and oblique views with an anteroposterior view through the open mouth show bony structures intact with no x-ray evidence of fracture or other bony injury. There is a rather severe degenerative osteoarthritis in the mid cervical area with considerable encroachment on the intervertebral foramina on both sides by osteophyte formation and there are osteophytes on the lateral aspects of the lower cervical vertebral bodies. There are some irregularities of contour of the cervicodorsal zygapophyseal articulations also a part of the arthritic process.

LUMBOSACRAL SPINE: Anteroposterior, lateral and oblique views show no evidence of fracture or other bony injury here. There seems to be a spina bifida occulta of the first sacral segment and there are moderately severe degenerative osteoarthritic changes in the lower lumbar and lumbosacral region. There is thinning of the lumbosacral disc. There is some arthritis involving the superior portion of the left sacro-iliac joint.

CONCLUSIONS:

1. Arthritis of mid cervical and lower cervical spine but no definite bony injury seen.

2. Arthritis of lower lumbar and lumbosacral and left sacro-iliac areas without evidence of bony injury at this time."

In addition to the arthritis of the spine, Dr. Stanford F. Hartman testified that

petitioner's history established a previously broken right leg resulting in a right leg which was shorter than his left leg, a previously broken right thumb, a deformity of the right elbow, a gall bladder condition and hemorrhoids.

Prior to the Commission's final award, the petitioner at the age of 64 years went on voluntary retirement with his union and began to draw a pension. While the fact of retirement does not have any direct bearing in support of the Commission's award, it does point up a problem necessary to be resolved in many industrial accident cases. This is the weight to be attributed to the infirmities of old age. Some men remain vigorous and active long past the customary age of retirement. But those engaging in hard or arduous labor are usually the first compelled to retreat from or who become the casualties of the labor market. Industrial compensation acts are not set up to provide retirement insurance, but are to compensate for loss of earning capacity occurring by reason of employmental injuries.

The totality of the facts before the Commission do not suggest a conclusive resolution for the problem here. The Commission could have disregarded petitioner's uncorroborated testimony that in 1964 he could but that in 1967 he could not work. Ireland v. Industrial Commission, 91 Ariz. 136, 370 P.2d 285. But assuming as a fact that petitioner's physical condition is such that he is unable to find gainful employment in the labor market, this does not mean that the Commission had to attribute all of petitioner's decline in earning capacity to the muscular strain arising out of the accident of November 9, 1964.

We have repeatedly held that awards and findings by the Commission as the trier of fact will not be disturbed if they are supported by any reasonable evidence. Malinski v. Industrial Commission, 103 Ariz. 213, 439 P.2d 485; Shroyer v. Industrial Commission, 98 Ariz. 388, 405 P.2d 875, rehearing denied, 99 Ariz. 266, 408

P.2d 406; Valerio v. Industrial Commission, 85 Ariz. 189, 334 P.2d 768.

■ In the instant case, the Commission could consider the arduous nature of petitioner's occupation, his age, and his physical condition at the time he attempted to reenter his former employment with Tanner Brothers Contracting Company as a heavy equipment operator on June 29, 1966. We think that under the evidence the Commission could find in December of 1967, that only 17.26% of his reduction in earning capacity arose out of petitioner's fall from the Caterpillar tractor and the resulting strain to his neck and back. As stated, these cases are difficult to evaluate because of the inconclusive nature of the evidence from which the evaluation must be made. But made it must be. We cannot supersede the judgment of the men appointed by law to make these decisions where there is, as here, some reasonable evidence to support their judgment.

Petitioner's second question attacks the average monthly wage of $326.56 as found by the Commission. The Industrial Commission made two findings concerning petitioner's average monthly wage. On or about July 15, 1965, an order was entered which included a finding that:

" * * * the (petitioner's) average monthly wage at the time of injury was $326.56."

On January 26, 1966, the Industrial Commission reaffirmed the same finding in its order of that date. Neither of the orders containing these findings was timely protested within 20 days as required by the Commission's rules. Later, on July 17, 1968, the Industrial Commission in final disposition of petitioner's claim, entered an award in which it reaffirmed all prior findings and orders. From this award a writ of certiorari was taken.

■■ At the onset, petitioner is met by the proposition that the findings fixing his average monthly wage at $326.56 are res judicata for failure to challenge their correctness at the time they were made. Such has been the uniform holdings of this court

for many years. Russell v. Industrial Commission, 104 Ariz. 548, 456 P.2d 918. By construction, A.R.S. § 23-951, subsec. A has been applied to intermediate awards, orders and findings so that if a rehearing is not requested and a timely review sought in the courts, the award, order or finding is forever conclusive; see: Pedigo v. Industrial Commission, 104 Ariz. 433, 454 P.2d 975; Talley v. Industrial Commission, 104 Ariz. 433, 454 P.2d 975; Wammack v. Industrial Commission of Arizona, 83 Ariz. 321, 320 P.2d 950; Kelsey v. Industrial Commission, 79 Ariz. 191, 286 P.2d 195.

There are adequate reasons why the construction as adopted should be adhered to. By statute, A.R.S. § 23-941, subsec. F as amended, the Commission is not bound by formal rules of procedure. Nearly all of the many thousands of claims processed by the Commission yearly are disposed of informally pursuant to this statute and are without any of the elements of an adversary proceeding. Under these circumstances mistakes of factual matters and the conclusions to be derived therefrom are inevitable. The testing of awards, orders and findings of the Commission predicated upon such mistakes should not be postponed, often for years, until the claimant's injuries have become stabilized and lengthy rehabilitation and retraining programs have been completed. It is in the interest of the sound administration of the Workmen's Compensation Act that an aggrieved person, whether the employee, the employer or his insurer, should promptly protest while the memories of witnesses are clear and records have not been lost or destroyed, requesting a hearing or rehearing as the case may be; and, then, if there is still disagreement, appeal expeditiously to the courts.

If the testing of intermediate awards, orders or the findings upon which they are predicated can be postponed to the time of final disposition of a claimant's case, the question arises whether they must be so postponed. If so, the obnoxious consequences are obvious. A single example will be sufficient; others come readily to mind. On the one hand, an employee might be compelled to contest the fact of a compensable claim on the grounds that the accident did not arise out of and in the course of his employment years after the Commission originally accepted jurisdiction. On the other, the employer, his insurer, or the compensation fund might improperly be compelled to pay disability benefits for an indefinite time for which there would be little possibility of recoupment from the employee. If an appeal is permitted, but not required, to test intermediate awards, orders and findings, it will hardly be less burdensome to the courts or the parties, since a matter of any material significance will be immediately tested in any event. We do not think that this latter is a satisfactory way to avoid "piecemeal" litigation.

The construction of A.R.S. § 23-951, subsec. A cited supra, and A.R.S. § 23-943 subsec. H as amended, requiring that an aggrieved person seek a review within 30 days after rendition of an award, order or finding best effectuates the spirit of the Workmen's Compensation Act by applying the statute to both intermediate and final awards, orders and findings.

The order of the Industrial Commission of July 17, 1968, is affirmed.

UDALL, C. J., LOCKWOOD, V. C. J., and McFARLAND and HAYS, JJ., concur.