498 P.2d 187

**Burl H. PARKS, Petitioner,**

**v.**

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**R. H. Fulton, Inc., Respondent Employer,**

**United States Fidelity & Guaranty Company, Respondent Carrier.**

**No. 1 CA–IC 711.**

Court of Appeals of Arizona,
Division 1,
Department A.
June 13, 1972.

Noel J. R. Levy, Phoenix, for petitioner.

William C. Wahl, Jr., Chief Counsel The Industrial Commission of Arizona, Phoenix, for respondent.

Maupin, Wilson & Maud, by Oliver H. Maud, Phoenix, for respondent employer and respondent carrier.

STEVENS, Presiding Judge.

Burl H. Parks, herein referred to as the petitioner, seeks a review of the 4 June 1971 "decision upon hearing and findings and award" of the hearing officer and the 3 August 1971 "decision upon review" entered by The Industrial Commission of Arizona affirming the above-referred to decision of the hearing officer.

The basic question before this Court is whether an injured workman who lives some distance from Phoenix and who is without the financial means to travel to Phoenix for a medical examination is subject to having his compensation suspended under A.R.S. § 23–1026, subsec. C.

This file should present a fairly simple fact situation but the file has been rendered complex and difficult to review by a number of factors. There are obviously matters in the file of the carrier which were the basis of carrier action which are not contained in the file before this Court. One exhibit was received into evidence at the hearing and the exhibit is not in the file and the record does not clearly reflect which documents constitute the exhibit. At the same time the Court is reasonably certain that copies of the documents are in the file. Certain reports which were not specifically indentified in the record were not received in evidence for the reason that the reports were already a part of the file. We are confident that the parties to the hearing were fully aware of the identity of these documents, however, the Court is not adequately informed as to their identity.

The petitioner lived in and was injured in Kingman. Until the time for the filing of the writ of certiorari in connection with this matter he represented himself. He was cared for by a Kingman physician who we are confident cared for him with professional competence, but the physician's records as to statements by the petitioner to the physician, the details of the physician's observations and his recommendations on various dates were not recorded in the physician's records and so understandably the physician's testimony with reference to some matters was a little vague.

The carrier reported sending checks to the petitioner which the petitioner stated arrived late or were not received.

The petitioner, representing himself, was not prepared in advance of the hearing with details as to his work and his earnings after the accident and before the hearing. The file contains correspondence after the hearing officer's 4 June award and prior to the Commission's 3 August 1971 affirmance thereof which may or may not have influenced the Commission. The foregoing and other matters have rendered this Court's review of this file more difficult than the apparently comparatively simple fact situation would seem to require.

On 12 January 1970 the petitioner injured his left ankle in an industrial accident. He continued working for his employer until 19 January 1970 when he first saw the attending physician. The Commission received the physician's report on 20 January. The employer's report was executed on 30 January and received by the Commission on 2 February. The carrier issued its notice of claim status on 6 February determining that the petitioner's average monthly wage was the statutory maximum of $1,000 a month. A copy of the notice was sent to the petitioner and recited that the first compensation was enclosed, a check which the petitioner testified he did not receive until some later date after some efforts on his part to secure the same. In any event, the Commis--

sion sent out its "notice of average monthly wage" in the same amount and this notice became final.

We next find that on 31 July 1970 the carrier sent out a "notice of claim status" terminating the petitioner's temporary compensation as of 3 April 1970 stating as its reason that the petitioner had returned to work. The file is silent as to the carrier's source of information, except that later in the file we find an implication that this notice of claim status was based upon a report received by the carrier from the petitioner's attending physician. Later the petitioner and the attending physician verified that the petitioner had returned to work on that date.

Before the statutory period expired the petitioner requested a hearing, request being directed to the 31 July 1970 notice of claim status.

In October the carrier requested by letter that the petitioner keep an appointment which the carrier had made with Richard L. Collins, M. D., of Phoenix, for an examination by Dr. Collins. Petitioner promptly advised the carrier that he was without funds to make the trip and the carrier replied that it would reimburse petitioner for his expenses. The correspondence did not advise the petitioner that his failure to keep the appointment could result in a suspension of his right to compensation, a procedure authorized by A.R.S. § 23–1026, subsec. C, this section reading as follows:

"C. If the employee refuses to submit to the medical examination or obstructs the examination, his right to compensation shall be suspended until the examination has been made, and no compensation shall be payable during or for such period."

The petitioner did not come to Phoenix for the examination.

In the meantime the petitioner was seen by his attending physician in June 1970 for a foot problem which appears to have not been related to his industrial accident of January 1970 but which may have impaired his ability to work. In September the petitioner again saw the attending physician for further care of the ankle. On 8 December 1970 he again saw his attending physician and was advised by the attending physician to not work due to the then condition of the ankle. No further efforts were made for an examination by Dr. Collins although the attending physician in a report requested that such a consultation be arranged.

The requested hearing was held in Kingman on 19 February 1971. The petitioner was not specifically asked concerning the exact periods of his employment between 3 April 1970 and 8 December 1970 although the fair import is that he was employed during a good portion of that time. His earnings and expenses were not inquired into. It was established by the petitioner and by the attending physician that beginning 8 December 1970 the petitioner was unable to return to his regular job due to the industrially related ankle injury of January 1970.

At the hearing it was established that a further medical evaluation of the ankle was required and the carrier moved for a continuance of the hearing until the examination and the report thereof could be completed. The hearing officer agreed.

The hearing officer entered his award of 24 March 1971. Petitioner sought the Commission review thereof and in May 1971 the award was set aside with Commission instructions for a further hearing. Nevertheless, a portion of the award is of interest. The hearing officer decided that as of the date of the carrier's request in October 1970 the petitioner was employed and could have afforded to go to Phoenix for the examination by Dr. Collins. The hearing officer suspended compensation pending the outcome of the consultation with Dr. Collins. The hearing officer also found that the petitioner was not employed on and after 8 December 1970 and directed

that the carrier promptly arrange for the consultation. He further directed that the carrier *advance* the necessary expenses to the petitioner.

Dr. Collins examined the petitioner on 6 April 1971 and rendered his report to the carrier on 12 April 1971. The carrier did not forward the report to the hearing officer until 18 May 1971. Promptly the hearing officer sent a copy of the report to the petitioner and informed the petitioner that unless, within 10 days, the petitioner requested the right to cross-examine Dr. Collins the failure to so request would be a waiver of the right of cross-examination and the hearing officer would proceed with his determination. There being no request, the hearing officer prepared his action of 4 June 1971, the action here in question. We express no opinion as to whether the hearing officer's letter of advice with reference to the right to cross-examination complies with the rules of the Commission. In this action the hearing officer quoted A.R.S. § 23–1026, subsec. C and suspended the petitioner's right to compensation between the October 1970 date of the tendered appointment with Dr. Collins and the 6 April 1971 examination by Dr. Collins. The *hearing officer also recognized that the petitioner's condition had not become stationary.*

As hereinbefore stated, the petitioner sought a Commission review of this action, the action was affirmed by the Commission and the writ was filed in this Court. Thus we see one of the great difficulties facing workmen in the matter of the finality of each of several stages of the processing of a claim, absent court review of each individual determination. The finality of the several stages of Industrial Commission adjudication is well established by Russell v. Industrial Commission of Arizona, 104 Ariz. 548, 456 P.2d 918 (1969), and Talley v. Industrial Commission of Arizona, 105 Ariz. 162, 461 P.2d 83 (1969).

█ We hold that the hearing officer and the Commission have erroneously interpreted A.R.S. § 23–1026, subsec. C as it applies to the petitioner under the fact situation reflected by the file. Assuming that the hearing officer was correct and that the petitioner could have afforded the trip to see Dr. Collins in October 1970, the hearing officer found that after 8 December 1970 it was the obligation of the carrier to advance the funds necessary for the examination. Under these circumstances it cannot be said that the petitioner thereafter refused to submit to the medical examination or that he obstructed a medical examination.

█ As hereinbefore noted, following the 4 June 1971 award of the hearing officer, numerous documents were placed in the file including an unverified request by the petitioner, dated 24 June 1971, requesting a change of hearing officer, citing A.R.S. § 23–941, subsec. J(5). No bias and prejudice was alleged. This filing was noted by the hearing officer on 2 September 1971 with the request that if there be hearings in the matter that they be assigned to another hearing officer. The request did not comply with the requirements of A.R.S. § 23–941, subsecs. I and J. The petitioner has not disqualified the hearing officer in question. This Court will not require the same hearing officer to continue with the case should he prefer to step aside.

The 4 June 1971 award of the hearing officer and the Commission's affirmance thereof are set aside. This claim file now stands with no determination binding upon the petitioner save and except the determination as to his average monthly wage.

CASE and DONOFRIO, JJ., concur.