498 P.2d 183

Robert J. ESSIG, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,
Arizona Highway Patrol, Respondent Employer,

State Compensation Fund, Respondent Carrier.

Nos. 1 CA–IC 419, 1 CA–IC 628.

Court of Appeals of Arizona,
Division 1,
Department B.

June 20, 1972.

Rehearing Denied July 18, 1972.
Review Denied Sept. 26, 1972.

Morgan & Jerome, by Donald J. Morgan, Phoenix, for petitioner.

William C. Wahl, Jr., Chief Counsel, Phoenix, for respondent, The Industrial Commission of Arizona.

Robert K. Park, Chief Counsel, State Compensation Fund, by Ronald M. Meitz, Machmer & Schlosser, Ltd., Phoenix, for respondent employer and respondent carrier.

HAIRE, Chief Judge.

In this matter, the review of two separate proceedings before the Industrial Commission have been consolidated.

The petitioner poses as the question presented for review the following:

"Can the Commission disregard overlapping and concurrent claims, and by treating each separately, deny both reopening and new injury, where the evidence is clear there was a continuing status of restriction from regular work?"

In stating the question the petitioner's attorney has oversimplified the procedural aspects of the two proceedings, has assumed the absence of jurisdictional defects which bear upon the question, and further has assumed the resolution of all medical questions in his favor contrary to determinations made by the Commission based upon competent medical testimony.

In order that the reader might have some understanding of the interrelationship of the two claims involved, we must go into some detail by way of factual and procedural background. The first injury (Claim BE–8343) occurred on February 19, 1967, when petitioner, while engaged in his duties as a highway patrolman, stopped along the highway to help a doctor change a tire on his car. In the midst of this activity petitioner experienced shortness of breath, dizziness, and some chest pain. The doctor took his pulse, noted it was over 170, and suggested he stop his activities.

At 3:00 p. m. petitioner got off work and reported the incident to his supervisor. The following day he reported to the hospital, with an initial diagnosis of "coronary insufficiency". Subsequent EKG tests by the attending doctor, Dr. Morton Thomas, substantiated this. In a letter to the Commission this same doctor stated that he did not think any myocardial infarction (permanent damage to the heart) was present.

On June 6, 1967 the Commission issued its Findings and Award for Non-Compensable Claim. This was timely protested, and a hearing was held on September 5, 1967. Dr. Thomas repeated his opinion that no permanent damage had occurred. Subsequently, on February 23, 1968 a Cardiovascular Board convened and examined the petitioner. Their report indicated agreement that there was no evidence of myocardial infarction, but it also stated, "It is our feeling that the duration of the effect of that episode upon the man's general activity was approximately two months." This was roughly the period of petitioner's convalescence following the episode.

A second hearing was scheduled for November 19, 1968, for purposes of cross-examination of the Board on the issue of permanency. In the interim petitioner suffered a second incident of chest pain and shortness of breath while on the job as a radio dispatcher. He was given emergency treatment on October 22, 1968 by Dr. Arthur Arnold of Kingman, Arizona.

At the November 19th hearing petitioner introduced a copy of a letter from Dr. Arnold which stated that he had a complete left branch system block. After further testimony by the petitioner, covering both incidents, Dr. Allen Gordon of the Cardiovascular Board testified. He reaffirmed the findings of the Board and added that in his opinion the second episode had no relationship to the first, but was merely attributable to a preexisting, underlying heart disease.

On the basis of this testimony the Referee recommended a rescinding of the previous Non-Compensability Award entered

on the first claim, and the entering of an award for medical benefits through April 30, 1967. No references or recommendations were made regarding any possible benefits attributable to the second episode. The petitioner objected on the grounds that the testimony of Dr. Arnold was needed before a fair determination could be made as to whether petitioner suffered a continuing disability. Nevertheless, the Commission issued a Decision Upon Hearing and Findings and Award for Compensable Claim in conformance with the Referee's recommendations.

This award was issued and served on the attorney for petitioner on January 28, 1969. On February 18, 1969, *21* days after service of the award on the first claim, a "Petition for Hearing" was submitted. That petition was denied on March 17, 1969, for the reason that the petition for hearing had not been submitted within the 20 day jurisdictional limit.

In the meantime a second claim (BG–47583) had been filed concerning the October 22, 1968 episode. On this matter the Commission had issued its Findings and Award for Non-Compensable Claim on January 7, 1969. This award, however, was never personally signed by the Commission members; it only bore their stamped signatures. In any event 42 days after service of the award a "Petition for Hearing" was submitted on this claim. On March 17, 1969 that hearing also was denied on jurisdictional grounds.

On March 21, 1969 two petitions for hearing were filed protesting each of these jurisdictional orders. A hearing finally was set in Kingman, Arizona on October 31, 1969. At that time the attorney for the Fund protested the taking of any testimony prior to resolution of the jurisdictional issues. The Referee allowed testimony to proceed, reserving judgment on the jurisdictional questions until after memoranda were submitted.

At the hearing Dr. Arnold, petitioner's family doctor for many years, testified to no prior history of heart ailments. He also expressed his opinion that while he had a feeling that no permanent damage was suffered from petitioner's first episode, and that recurrences ordinarily are quite common and temporary, it would be impossible to say that petitioner had not suffered some type of damage.

On the second claim the Referee ruled against the Fund on the jurisdictional issue because of the lack of signed signatures on the protested award, but in favor of the Fund on the merits. In issuing his report recommending no compensation, the Referee referred to the medical testimony of Dr. Gordon in the earlier hearing, which indicated that this second episode was not precipitated by petitioner's employment, but was a reoccurrence of the symptoms of underlying heart disease.

In a separate report on the first claim, the Referee found that the award became final and was *res judicata,* because the petition for hearing was untimely, and the order complained of had been signed in writing by the Commission members.

Attorney for petitioner objected to these findings. His position was that his untimely "Petition for Hearing" on the first claim should have been considered a petition to reopen, and thus not subject to the 20 day jurisdictional limit. He also alleged that the hearing officer ignored "new clinical evidence"—presumably the testimony of Dr. Arnold and the circumstances surrounding the second episode.

On January 16, 1970 the Commission issued its decision on the first claim, agreeing with the hearing officer that the petition for hearing was untimely. Thus it found that the January 28, 1969 award for temporary disability became final and *res judicata,* and that the Commission lacked further jurisdiction in the matter. An application to the Court of Appeals for a

writ of certiorari to review the lawfulness of that decision was promptly made.

On April 22, 1970 the Commission issued its decision on the second claim. On the jurisdictional question it agreed that the stamped signatures without any other record of Commission action voided its prior award in the second claim. On the merits it adopted the Referee's recommendation for non-compensable claim. This award was protested, and petitioner, in his petition for another hearing, sought to bring in the first claim again, alleging that the two were "inextricably connected". The petition for another hearing was granted, but in a July 9, 1970 letter petitioner's attorney was advised that only issues relating to the second claim would be considered. This hearing was ultimately held in Kingman, Arizona, on October 5, 1970. Only lay testimony was presented. The parties waived by stipulation a further hearing for presentment of more medical testimony, it being agreed by both parties and by the Referee that all medical testimony in both files could be considered in the resolution of the issues, with the Referee specifically referring to Dr. Arnold's testimony.

The Referee's report which subsequently issued, again recommended an award for a non-compensable claim, to which petitioner again objected on substantially the same grounds mentioned before. On February 1, 1971 the Commission issued its Findings and Award to the effect that the second claim was non-compensable. This was the last and final action taken by the Commission on this matter. An appeal by way of certiorari was taken from this award, and, by agreement of the parties, both cases were consolidated for purposes of appeal.

As previously stated, the issue on appeal is phrased by counsel for petitioner thusly:

"Can the Commission disregard overlapping and concurrent claims, and by treating each separately, deny both reopening and new injury, where the evidence is clear there was a continuing status of restriction from regular work?"

It encompasses challenges to the jurisdictional decision in the first case, to the decision on the merits in both cases, and to the fact that the Commission (and the referees) refused to fully consolidate both cases in its decisions.

■■ As to the first case we find it unnecessary to consider the merits, as we believe the Commission decided correctly on the jurisdictional question. The Commission rendered its signed award on January 28, 1969, with a 20 day notice provision. The record contains an affidavit of service establishing that service was made on petitioner's attorney by registered mail on that same day. The only protest received was by way of a petition for hearing which was stamped received by the Commission after the award was served, and was untimely. Thus the award became final and, on February 18, 1969. This was 21 days. *res judicata* as to the findings contained therein. *See* Russell v. Industrial Commission, 104 Ariz. 548, 456 P.2d 918 (1969); Talley v. Industrial Commission, 105 Ariz. 162, 461 P.2d 83 (1969). There can be no waiver by the Commission of such a jurisdictional defect, as petitioner suggests was done, by mere references in later hearings to the fact of the first injury. And we cannot say that the Commission committed error in failing to treat petitioner's untimely filed "Petition for Hearing" after the award on the first claim as a petition to reopen that claim, where no new, additional or previously undiscovered condition was either alleged or supported by a physician's statement as required by the applicable statutes. See A.R.S. §§ 23–1061 and 23–1270. Petitioner's attorney is certainly no novice in workmen's compensation procedures, and it is not unreasonable to require some semblance of compliance with statutory mandates.

■■■ To the extent that on this appeal petitioner's question raises a challenge to

the finding of no disability on the second claim, we would agree that evidence of the first injury was relevant to the issue of the relationship between the injuries, and thus to the question of whether the second episode was merely a recurrent symptom of an underlying disease or an actual injury causally related to petitioner's employment. The doctrine of *res judicata* would not bar such evidence. We hasten to add, however, that the record shows that both parties and the Referee affirmatively recognized that all of the evidence in both claims could be considered in determining the merits of the second claim. In this connection, we have examined the record and find ample support for the Commission's finding that petitioner's second heart episode was not work related and did not constitute an injury by accident arising out of and in the course of his employment.

The awards are affirmed.

EUBANK, and JACOBSON, JJ., concur.