527 P.2d 1244

Richard L. HUFFMAN, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

M. M. Sundt Construction Company, Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. 1 CA–IC 984.

Court of Appeals of Arizona,
Division 1,
Department A.

Nov. 14, 1974.
Rehearing Denied Feb. 24, 1975.
Review Denied April 1, 1975.

**402**

Davis & Eppstein, by Robert W. Eppstein, Tucson, for petitioner.

Edward F. Cummerford, Chief Counsel The Industrial Commission of Ariz., Phoenix, for respondent.

Robert K. Park, Chief Counsel, State Compensation Fund by Dee-Dee Samet, Phoenix, for respondent carrier and respondent employer.

## OPINION

STEVENS, Judge.

Richard L. Huffman (petitioner) sustained an industrial injury on 18 December 1967. The initial medical report contained the following diagnosis, "lumbar & cervical strain." The petitioner returned to his employment within 7 days. On 6 November 1967 an award was entered granting accident benefits and closing the file without an award for compensation. This award became final.

A petition to reopen was filed and was granted on 31 January 1968. The claim remained open until the filing of the current proceedings in this Court so that the issues are governed by the law as it existed prior to 1 January 1969. The hearing was conducted by a "referee" rather than by a "hearing officer" and all awards and other action were entered by the Commission. As of 1 January 1969 the State Compensation Fund became an agency separate from the Commission.

Since the closing was a "less than 7 days, no compensation award", there was no finding relative to the petitioner's average monthly wage. We find in the file, under date of 1 February 1968 in longhand, a memo showing an average monthly wage computation in the sum of $676.15. No Commission action was then taken to make an official determination of the average monthly wage.

On 10 September 1968, Richard L. Toll, M.D., performed surgery stated to be "laminectomy & excision of disc, L–5, S–1, left." The petitioner continued to experience problems which precluded his return to his employment as an iron worker.

The petitioner's rehabilitation was undertaken. He first finished school work equivalent to a high school diploma and he then entered at Pima Community College seeking an Associate Degree in Business Administration. Dr. Toll conducted an examination of the petitioner on 11 September 1970. In part, the doctor's report states:

"I believe that this case can now be closed with a 15% permanent partial general impairment. It should be noted that he continues to require a mild analgesic and I recommend that money be set aside for this purpose. He is taking about $12.00 worth of Darvon Company 65. Monthly."

Following this report and on 28 October 1970 the Commission entered an award. Before the Commission on 20 February 1973, as well as in this Court and this proceeding, the petitioner urges that the 28 October award is void because of inconsistencies within the award and because it is contrary to the medical evidence extracted above from Dr. Toll's report. In the 28 October award, for the first time, the Commission purported to fix the petitioner's average monthly wage, fixing that wage in the sum of $676.15. This is the same figure set forth in the longhand memorandum of 1 February 1968.

We quote portions of the 28 October 1970 award.

"FINDINGS

\*   \*   \*   \*   \*   \*

"2. That the average monthly wage of applicant prior to injury was $676.15.

"3. That applicant's physical condition is not yet stationary.

\*   \*   \*   \*   \*   \*

"5. That applicant has sustained an unscheduled disability as the result of said accident.

\*   \*   \*   \*   \*   \*

"7. That said applicant is entitled to \* \* \* compensation for partial temporary disability from January 20, 1969 through April 19, 1969; \* \* \* and from September 12, 1970 through September 27, 1970 \* \* \*.

"8. That said applicant is presently engaged in vocational rehabilitation and is entitled to compensation on a partial temporary disability status, based upon 65% of his average monthly wage during such course of study or until further order of the Commission.

\*   \*   \*   \*   \*   \*

"AWARD

\*   \*   \*   \*   \*   \*

"3. Compensation for temporary partial disability after September 28, 1970, during his course of vocational rehabilitation training or until further order of the Commission.

\*   \*   \*   \*   \*   \*

"ORDER

"THIS COMMISSION HEREBY ORDERS applicant, at the completion of his vocational training, to make a sincere, honest and conscientious effort to obtain, and retain, work of any nature that he is physically and mentally capable of performing, and to avail himself of all employment opportunities in his locality.

"IT IS FURTHER ORDERED that applicant, following his vocational training, file with this Commission a written report of his efforts to secure employment and of his earnings each month until further order of the Commission."

The award expressly provided for the retention of jurisdiction in the Commission. It contained a 20-day clause in accordance with the law applicable to this claim. No action was taken by the petitioner within the 20-day period.

After the petitioner successfully completed his course of study at the Pima Community College and on 12 June 1972 he wrote the Commission requesting permission to leave Arizona to look for employment. He concluded his letter as follows:

"I will be away about two months; I should find something by then. If not, I will return and I'm not sure what I will do. I would like to leave about the 20th of June and will return the 20th of August. I will be in Clinton, Illinois, R.R. #1."

In response to this letter and on 1 August 1972 the Commission entered its "record of Commission action" wherein it was stated:

"FINDINGS

"1. Heretofore on October 28, 1970 the Commission issued its Findings and Award and Order Pending Determination of Earning Capacity, providing for partial temporary compensation based on 65% of said applicant's average monthly wage during said applicant's course of vocational rehabilitation study, or until further order of the Commission.

"2. That said applicant has completed his vocational rehabilitation course of study and has filed written request to leave the State of Arizona to travel to the State of Illinois for a period of two months, July and August, 1972, for the purpose of seeking employment.

"3. That the Commission has given special consideration to said applicant's request to leave the State of Arizona and approves payment of partial temporary compensation during his absence from the state for the period of two months, July and August, 1972.

"ORDER

"IT IS ORDERED that partial temporary compensation be continued while said applicant is out of the State of Arizona for a period of two months, July and August, 1972."

This action likewise contained a 20-day clause and again no action was taken by the petitioner within the specified period.

The petitioner extended his stay in Illinois beyond the month of August 1972. In fact, the record indicates that he did not return to Arizona at any time that this matter was before the Commission. In October 1972 he signed and sent a report form to the Commission advising that he needed more time to get started in business. On 9 November 1972 another "record of Commission action" was entered which also contained a 20-day clause. In part this record recites:

"FINDINGS

"1. Heretofore on October 28, 1970 the Commission issued its Findings and Award and Order Pending Determination of Earning Capacity, providing for partial temporary compensation based on 65% of said applicant's average monthly wage during said applicant's course of vocational rehabilitation study, or until further order of the Commission.

"2. That said applicant completed his vocational rehabilitation course of study and requested permission to leave the State of Arizona to travel to the State of Illinois for a period of two months, for the purpose of seeking employment.

"3. That the Commission gave special consideration to said applicant's request to leave the state and approved payment of partial temporary compensation during his absence from the state not to exceed a period of two months.

"4. That said applicant has not obtained employment nor advised of his intentions concerning his return to the State of Arizona; that evidence in our file is insufficient to determine whether said applicant is suffering a reduction in earnings

due to the injury of September 18, 1967 and, therefore, partial temporary compensation is terminated as of September 20, 1972, pending determination of said applicant's loss in earning capacity, if any.

"ORDER

"IT IS ORDERED that partial temporary compensation, be, and the same is terminated as of September 20, 1972, pending determination of said applicant's loss in earning capacity, if any."

Again the petitioner allowed the 20 days to elapse without action on his part.

On 24 November 1972 a loss of earning capacity hearing was set for 20 February 1973 in Tucson. The Fund noticed the petitioner for a Tucson deposition to be held on 11 January 1973. The petitioner did not appear for the deposition. The Fund attempted to institute other discovery. Sometime prior to this scheduled hearing the petitioner employed counsel for the first time, his present counsel. After an examination of the file his counsel was of the opinion that a loss of earning capacity hearing could not be held since Finding No. 3 of the 28 October award found that the petitioner's "physical condition is yet not stationary." The referee to whom the matter had been assigned agreed with this position. Counsel for the petitioner advised the petitioner to not come to Arizona for the hearing, which advice the petitioner honored.

In his report to the Commission the referee, in his "statement of facts", recited:

"The cited report indicates that Dr. Toll considered the applicant's condition to be stationary. However, since the applicant was being vocationally rehabilitated at Pima College the Industrial Commission elected to continue him on temporary compensation and did not make a finding that his condition was stationary. The applicant graduated from Pima College in May of 1972."

At the time of the oral argument before this Court, counsel for the petitioner and

counsel for the Fund agreed that the intent of the Commission in its inconsistent award of 28 October was to continue the petitioner's compensation award to aid in his rehabilitation by permitting him to complete his two years of college study.

The referee's report further stated:

"There is no evidence to indicate that the applicant's condition has changed from that reported by Dr. Toll on September 11, 1970. Since temporary compensation was terminated on September 20, 1972 the Industrial Commission should enter a finding that the condition was stationary on September 20, 1972."

The referee made findings which were incorporated by the Commission in its award of 24 April 1973. These will be quoted later in this opinion. The referee's report continued, in part, as follows:

"RECOMMENDATIONS

"1. Enter findings and award pursuant to the Findings set forth hereinabove.

"2. Reserve jurisdiction under the provisions of the Arizona Workmen's Compensation Law to make a final award and determination of compensation for permanent partial disability.

"REASONS FOR RECOMMENDA-
TIONS

\*     \*     \*     \*     \*     \*

"A finding by the Commission that the applicant's condition resulting from said industrial accident is stationary and that he has sustained a permanent unscheduled disability therefrom must be made before a determination of loss of earning capacity, if any, can be made."

As before stated, the Commission entered its award of 24 April 1973. The findings entered were consistent with the referee's report and are quoted as follows:

"FINDINGS

"1. That the applicant sustained personal injury by accident arising out of and in the course of his employment with the above-named defendant employer on September 18, 1967.

"2. That the applicant's physical condition was stationary on September 20, 1972.

"3. That the applicant has sustained an unscheduled disability consisting of a 15% general impairment as a result of the industrial injury of September 18, 1967.

"4. That the evidence in the file is insufficient to make an award to determine what effect said applicant's disability has on his earning capacity; therefore, this Commission reserves jurisdiction under the provisions of the Arizona Workmen's Compensation Law to make a final award and determination of compensation for permanent partial disability."

The 24 April award was brought to this Court for a timely review.

As stated earlier in this opinion, the petitioner urges that the 28 October 1970 award is inconsistent within itself, that it is contrary to the medical evidence contained in the report of Dr. Toll relative to his 11 September 1970 examination and that the award is void. The petitioner urges the award is void thus making available to the petitioner proof relative to his true average monthly wage.

We agree that Finding No. 3 wherein it was stated that the petitioner's "physical condition is yet not stationary" is inconsistent with the only medical evidence, being Dr. Toll's report, and is inconsistent with Finding No. 5 which stated that the petitioner "has sustained an unscheduled disability." Had there been a timely attack upon the award of 28 October 1970 possibly the award would have been modified by the Commission or by the Court on a Judicial review.

The petitioner failed to avail himself of the opportunity to protest the Commission's findings and award of 28 October 1970 within the 20-day period as required. As a result, this award became final. Talley

v. Industrial Commission, 105 Ariz. 162, 461 P.2d 83 (1969); Russell v. Industrial Commission, 104 Ariz. 548, 456 P.2d 918 (1969); Martinez v. Industrial Commission, 97 Ariz. 275, 399 P.2d 678 (1965); Hale's Estate v. Industrial Commission, 78 Ariz. 202, 277 P.2d 1014 (1954).

> "When a matter is decided and the judgment becomes final, the jurisdiction is exhausted and the court has no more power to waive a rule than it has to commit any other judicial act concerning the subject matter.

> "A court cannot re-create an exhausted jurisdiction by waiving a rule that has already operated to close the book of judicial inquiry. There must at some time be an end to litigation * * *." Martin v. Industrial Commission, 63 Ariz. 273, 277, 161 P.2d 921, 922 (1945), quoting Guy F. Atkinson Co. v. Kinsey, 61 Ariz. 127, 130, 144 P.2d 547, 548 (1944). Accord. Davila v. Industrial Commission of Arizona, 98 Ariz. 258, 403 P.2d 812 (1965); Smith v. Industrial Commission of Arizona, 79 Ariz. 18, 218 P.2d 797 (1955).

> "Under these circumstances mistakes of factual matters and the conclusions to be derived therefrom are inevitable. The testing of awards, orders and findings of the Commission predicated upon such mistakes should not be postponed, often for years, until the claimant's injuries have become stabilized and lengthy rehabilitation and retraining programs have been completed. It is in the interest of the sound administration of the Workmen's Compensation Act that an aggrieved person, whether the employee, the employer or his insurer, should promptly protest * * *." Talley v. Industrial Commission, 105 Ariz. 162, 166, 461 P.2d 83, 87 (1969).

There being no timely attack on the 9 November 1972 Commission action as reflected by the record entered on that date, that action is not subject to judicial review in these proceedings.

■ In view of Finding No. 3 in the 28 October 1970 award and the subsequent events, the Commission was justified in terminating temporary compensation as of 20 September 1972 as set forth in its action of 9 November 1972. This justification is not medical evidence as to the fact that on 20 September 1972 the petitioner's physical condition was stationary.

The 24 April 1973 Finding No. 2 that the petitioner's physical condition was stationary on 20 September 1972 is not consistent with the 28 October 1970 award Finding No. 3 that his physical condition was then not yet stationary. As we read Finding No. 2 in the 24 April 1973 award this is not a finding that his condition became stationary on 20 September 1972 but a finding that on that date it was stationary.

■ There is no medical evidence in the file subsequent to the 28 October 1970 award. In view of our holding in this matter, we express no opinion as to whether the totality of the circumstances might justify an award specifying a stationary physical condition. In view of the absence of medical evidence the 24 April 1973 award must be set aside on this timely judicial review.

We recognize that some inconsistencies remain unresolved. The matter of payment of temporary compensation up to 20 September 1972 is not subject to being reopened. In our opinion the only issues remaining are; (1) the date upon which the petitioner's physical condition became stationary and, (2) the determination of the loss of earning capacity, if there be a loss of earning capacity, based upon an average monthly wage of $676.15.

The award of 28 October 1970 and all Commission action taken prior to the award of 24 April 1973 are final and not subject to judicial review or Commission modification.

The award of 24 April 1973 is set aside.

DONOFRIO, P. J., and OGG, J., concur.